UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

RAFIC SAADEH,

                                            Plaintiff,

           -against-

MICHAEL KAGAN, et al.,

                                           Defendants.

-----------------------------------------------------------------X

20-CV-01945 (PAE) (SN)

**REPORT AND RECOMMENDATION**

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE PAUL A. ENGELMAYER:**

This case is about a $130,000 loan made by Plaintiff Rafic Saadeh to Irving Kagan, who is now deceased, and Saadeh's efforts to recoup the loan from Irving Kagan's sons and the Estate of Irving Kagan (the "Estate") after the loan became due on April 30, 2018. Saadeh sued the Estate of Irving Kagan and Irving Kagan's sons, Michael and Joshua Kagan. The Estate never answered the Complaint and never appeared. On January 29, 2021, the Court entered a default in Saadeh's favor against the Estate and referred the matter to my docket to conduct an inquest on damages. Because Saadeh has established a sufficient basis on which to award damages, I recommend he be awarded $136,368.22, plus pre- and post-judgment interest to be calculated at the relevant statutory rates.

## BACKGROUND

On March 4, 2020, Rafic Saadeh sued Michael Kagan and the Estate of Irving Kagan, by its administrator, Michael Kagan. ECF No. 4. Saadeh brought claims for breach of contract and

1

promissory estoppel against the Estate and Michael Kagan, and for fraudulent conveyance against Michael Kagan, and sought damages and attorney's fees and costs. Id.

After Defendants failed to appear, Saadeh filed a proposed clerk's certificate of default against Michael Kagan and the Estate, and the Clerk of Court issued the certificates of default against both Defendants. See ECF Nos. 13, 15, 17, 18. Thereafter, Saadeh moved for default judgment against Michael Kagan and the Estate. See ECF No. 19. A few weeks later, Michael Kagan, proceeding *pro se* in his individual capacity and as the representative of the Estate, emailed the chambers of the Honorable Paul A. Englemayer, opposing Saadeh's motion for default judgment and requesting an extension of time to respond to the Complaint "on behalf of both [his] father's estate (as administrator) and [him]self." See ECF No. 27. In light of this appearance, Judge Engelmayer denied Saadeh's motion for default judgment against both Defendants. See id.

Before he answered, Michael Kagan sought to adjourn an initial pretrial conference, asserting that he had learned that he could not proceed *pro se* as administrator of Irving Kagan's estate and therefore could not submit an answer on behalf of the Estate. See ECF No. 32. He also asserted that he had "limited powers of appointment" that he was unsure gave him power to take legal actions involving the Estate. Id. The Limited Letters of Administration for the Estate issued by the Chief Clerk of the Court of New York County Surrogate's Court filed by Michael Kagan indicated that he was the fiduciary of the Estate with powers subject to certain limitations:

> These letters confer no power to take possession or control of any property until further order of this court, and with respect to a cause of action are limited to the power to prosecute and confer no power to compromise the action, collect any settlement or enforce any judgment until further order of this court, or the order of any court of competent jurisdiction (EPTL 5-4.6).

2

> THESE LETTERS, granted pursuant to a decree entered by the court, authorize and empower the above-named fiduciary . . . to perform all acts requisite to the proper administration and disposition of the estate/trust of the Decedent in accordance with the laws of New York State, subject to the limitations and restrictions, if any, as set forth above.

ECF No. 32, Ex. A.

Michael Kagan answered the Complaint in his individual capacity on July 6, 2020, but did not answer on behalf of the Estate. See ECF No. 37. Given Michael Kagan's stated attempts to secure counsel for the Estate, the Court adjourned the time for the Estate to answer or otherwise respond to the Complaint "until further order of the Court." ECF No. 38. Following an Initial Pretrial Conference on August 11, 2020, the Court instructed that "[i]f, by September 10, 2020, the Estate has not appeared, Plaintiff may file a letter renewing his application for a default to be entered against the Estate." ECF No. 39.

The Estate did not appear, then or ever. Saadeh renewed his motion for a default judgment against the Estate, and Judge Engelmayer ordered the Estate to show cause by October 8, 2020, as to why a default judgment should not issue. See ECF Nos. 40, 41.

On October 30, 2020, Saadeh filed his Amended Complaint, adding Joshua Kagan, another son of Irving Kagan, as a defendant. See ECF No. 45. Michael Kagan answered the Amended Complaint on November 19, 2020, and Joshua Kagan moved to dismiss the Amended Complaint on December 15, 2020. See ECF Nos. 50, 53. The Estate did not answer.

On December 4, 2020, Judge Engelmayer directed the administrator of the Estate to "move forthwith before the Surrogate's Court to obtain authority to defend the Estate in this case." ECF No. 52. At that time, Judge Engelmayer also denied Saadeh's motion for a default judgment against the Estate without prejudice. Id.

3

On January 11, 2021, Saadeh moved to reopen the motion for default judgment against the Estate. See ECF No. 64. Saadeh asserted that an October 2, 2020, Certificate of Appointment of Administrator indicated that Amended Letters of Administration had been issued to Michael Kagan on September 30, 2020, and that Michael Kagan now had no relevant limitations to his authority to act on behalf of the Estate. Id. at 2; see also ECF No. 64, Ex. A (New York County Surrogate's Court Certificate).

Immediately, Judge Engelmayer acknowledged the September 30, 2020 Letters of Administration, and directed Michael Kagan that if he intended to oppose the motion, he must file a letter explaining why the Court should not enter a default judgment against the Estate. See ECF No. 65. The Court did not receive a letter from Michael Kagan opposing the motion, and Saadeh renewed his motion for a default judgment against the Estate for a third time on January 21, 2021. See ECF No. 70.

Judge Engelmayer entered a default against the Estate on January 29, 2021, finding that proof of service had been filed and the Estate had failed to appear for any purpose in this case, and referring this matter to me to conduct an inquest on damages. See ECF Nos. 74, 75. Saadeh filed his Proposed Findings of Fact and Conclusions of Law and supporting documentation on February 16, 2021.[1] See ECF Nos. 84–85. Again, the Estate did not appear or file any papers in opposition.

---

[1] Saadeh filed his Second Amended Complaint on March 18, 2021. See ECF No. 95. Because the Amended Complaint was the operative complaint at the time the default judgment was entered against the Estate, the Court will not rely on the Second Amended Complaint for the purposes of this inquest.

**DISCUSSION**

**I.      Legal Standard**

The Court of Appeals set forth the procedural rules applicable to the entry of a default judgment in City of New York v. Mickalis Pawn Shop, LLC:

> "Federal Rule of Civil Procedure 55 is the basic procedure to be followed when there is a default in the course of litigation." Vt. Teddy Bear Co. v. 1–800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004). Rule 55 provides a "two-step process" for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment. New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005). The first step, entry of a default, formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff. . . . The second step, entry of a default judgment, converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c).

645 F.3d 114, 128 (2d Cir. 2011).

Where default has been entered against a defendant, courts are to accept as true all of the well-pleaded facts alleged in the complaint, except those concerning the amount of damages. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 108 (2d Cir. 1997) (citing Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992)). "Even after the default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." In re Industrial Diamonds Antitrust Litig., 119 F. Supp. 2d 418, 420 (S.D.N.Y. 2000) (cleaned up). Where a plaintiff's well-pleaded facts are sufficient to state a claim on which relief can be granted, the only remaining issue in an inquest is if the plaintiff has provided adequate support for the requested relief. See Gucci Am., Inc. v. Tyrrell-Miller, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008) (citing Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)).

5

"[A] plaintiff seeking to recover damages against a defaulting defendant must prove its claim th[r]ough the submission of evidence . . . ." Malletier v. Carducci Leather Fashions, Inc., 648 F. Supp. 2d. 501, 503 (S.D.N.Y. 2009). A court may determine the amount a plaintiff is entitled to recover without holding a hearing so long as (1) the court determines the proper rule for calculating damages, and (2) the evidence submitted by the plaintiff establishes "with reasonable certainty" the basis for the damages. Id. (first citing Credit Lyonnais Sec. (USA), Inc., 183 F.3d at 155, then citing Transatlantic Marine Claims Agency Inc., 109 F.3d at 111).

## II. Liability

### A. Facts Related to Liability

The following facts are established by the admissible evidence submitted for this inquest and the allegations in the Amended Complaint, which are deemed admitted except to the extent they concern the amount of damages. See Greyhound, 973 F.2d at 158.

On June 29, 2017, Irving Kagan entered into a loan agreement with Rafic Saadeh (the "Loan Agreement"). See ECF No. 45 ("Am. Compl.") ¶¶ 7–8; ECF No. 85 ("Saadeh Decl.") ¶ 3. The loan agreement stated:

> In consideration of the payment to and receipt by the undersigned, IRVING KAGAN, a U.S. citizen . . . (the "Borrower"), of the sum of ONE HUNDRED THIRTY THOUSAND U.S. Dollars (U.S.$130,000.00) (the "Loan"), from RAFIC SAADEH . . . (the "Lender"), the Borrower hereby agrees and promises to repay the Loan to Lender no later than the end of the sixth (6th) month from and after the date of the receipt of the Loan, together with interest at the rate of six percent (6%) per annum as of such repayment date.

ECF No. 85, Ex. A.

6

Pursuant to the Loan Agreement, Saadeh wired $130,000 to Irving Kagan on or before July 6, 2017.[2] See Am. Compl. ¶ 10; Saadeh Decl. ¶ 3; ECF No. 85, Ex. B. Therefore, repayment of the loan was due on January 31, 2018 (as the end of the sixth month after the money was received).[3] Am. Compl. ¶¶ 9–10; Saadeh Decl. ¶¶ 4–5; see ECF No. 85, Ex. A. On December 20, 2017, Michael Kagan emailed Saadeh, requesting an extra 90 days for repayment of the loan, thereby moving the due date to April 30, 2018; Irving reiterated Michael's request for an extension, and Saadeh agreed. Am. Compl. ¶¶ 12–15; Saadeh Decl. ¶ 6; ECF No. 85, Ex. C.

The loan was not repaid on April 30, 2018, or ever. Am. Compl. ¶ 16; Saadeh Decl. at ¶¶ 7–8. The loan has therefore been in default since April 30, 2018. See Saadeh Decl. ¶ 9. On May 31, 2018, after he was reminded of the April 30 deadline, Michael Kagan asked that the loan be extended for another 45 days beyond May 31, 2018. Am. Compl. ¶ 17. Saadeh notes that he never agreed to 45 days, but he did ask Michael Kagan to "please arrange the repayment by the latest end, June 2018." ECF No. 45, Ex. D.

Irving Kagan died on January 12, 2020. See Am. Compl. ¶ 22. Throughout the relevant period, Irving Kagan was a citizen and resident of the State of New York, and he executed the Loan Agreement in New York. See ECF No. 85, Ex. A (Loan Agreement signed before New York State Notary Public); Saadeh Decl. ¶12. The Surrogate's Court for the County of New York established the Estate and appointed Michael Kagan as its Administrator. Am. Compl. ¶ 4.

---

[2] Plaintiff explains that the funds were transmitted on July 3, 4, and 5, 2017, but consents to use July 6, 2017, as the date the money was transferred for purposes of this inquest. See ECF No. 84 ¶ 3.
[3] In his declaration filed with his Proposed Findings of Fact and Conclusions of Law, Saadeh states that the initial due date for the loan was January 6, 2018. According to the Loan Agreement, this is incorrect. See Saadeh Decl. ¶ 5; ECF No. 84 (Proposed Findings of Fact and Conclusions of Law) (stating the deadline is January 6, 2018). The Amended Complaint indicates that the original due date for the loan repayment was January 31, 2018, which would be the "end of the sixth (6th) month from and after the date of the receipt of the Loan." Am. Compl. ¶ 10; ECF No. 85, Ex. A.

### B. Breach of Contract

"To prevail on a breach of contract claim under New York law, a plaintiff must prove '(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages.'" Terwilliger v. Terwilliger, 206 F.3d 240, 245–46 (2d Cir. 2000) (quoting First Invs. Corp. v. Liberty Mut. Ins. Co., 152 F.3d 162, 168 (2d Cir. 1998)). The Court applies New York state law because it sits in diversity. Bank of N.Y. v. Amoco Oil Co., 35 F.3d 643, 650 (2d Cir. 1994) ("A federal court sitting in diversity jurisdiction will, of course, apply the law of the forum state on outcome determinative issues.").

Saadeh alleged a valid cause of action in his Amended Complaint for breach of contract by claiming that (1) Irving Kagan entered into a loan agreement with him; (2) he performed by wiring $130,000 to Irving Kagan's New York bank account on July 3, 4, and 5, 2017; (3) Irving Kagan breached by failing to repay the principal and agreed-upon interest; and (4) such breach resulted in money damages. See generally Am. Compl. Accordingly, the Court finds that the Estate is liable for breach of contract, and Saadeh is entitled to damages in the amount determined below.

## III.   Damages[4]

In New York, a "fundamental principle" of an award of damages for breach of contract is that it "should put the plaintiff in the same economic position he would have been in had the defendant fulfilled the contract." HTV Indus., Inc. v. Agarwal, 317 F. Supp. 3d 707, 717 (S.D.N.Y.) (quoting Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 262 (2d Cir. 2002)), as amended on other grounds (June 18, 2018). "In a typical breach of contract case, a non-breaching

---

[4] Saadeh brought breach of contract and fraudulent conveyance claims against the Estate. See generally Am. Compl. Because he now seeks damages pursuant to his breach of contract claim, only those damages will be considered. See ECF No. 84.

8

party is entitled to the payment it is due under the terms of the contract, less the payment it has already received and the cost to it to perform the remainder of the contract." Arch Ins. Co. v. Precision Stone, Inc., 584 F.3d 33, 40–41 (2d Cir. 2009) (citing United States ex rel. N. Maltese & Sons, Inc. v. Juno Constr. Corp., 759 F.2d 253, 255 (2d Cir. 1985)).

New York law also provides that pre-judgment interest "shall be recovered upon a sum awarded because of a breach of performance of a contract." HTV Indus., Inc., 317 F. Supp. 3d at 717 (quoting N.Y. CPLR § 5001(a)). The interest rate is set by N.Y. CPLR § 5004. When "determining the rate of interest to be recovered for unpaid principal, it is well-established that 'when a contract provides for interest to be paid at a specified rate until the principal is paid, the contract rate of interest, rather than the legal rate set forth in CPLR 5004, governs until payment of the principal or until the contract is merged in a judgment.'" NML Cap. v. Republic of Argentina, 621 F.3d 230, 240 (2d Cir. 2010) (quoting NYCTL 1998–2 Trust v. Wagner, 61 A.D.3d 728, 729 (2d Dep't 2009)), certified question accepted, 15 N.Y.3d 859 (2010), certified question answered, 17 N.Y.3d 250 (2011); accord HTV Indus., Inc., 317 F. Supp. 3d at 717.

There are two types of damages available to successful plaintiffs in breach of contract cases: general damages and consequential damages ("special damages"). See Diamond v. Calaway, No. 18-cv-03238 (KPF) (KHP), 2019 WL 8955300, at *7 (S.D.N.Y. Oct. 25, 2019) (citing Biotronik A.G. v. Conor Medsystems Ireland, Ltd., 22 N.Y.3d 799, 805 (2014)), report and recommendation adopted, 2020 WL 1228625 (S.D.N.Y. Mar. 13, 2020). General damages are compensatory, intended to place the non-breaching party "in the same position it would have occupied had the breaching party satisfied its obligations under the contract." Vill. of Ilion v. Cty. of Herkimer, 23 N.Y.3d 812, 822–23 (2014); see also PNC Bank, Nat'l Ass'n v. Wolters Kluwer Fin. Servs., Inc., 73 F. Supp. 3d 358, 370 (S.D.N.Y. 2014) ("A plaintiff is seeking

9

general damages when he tries to recover 'the value of the very performance promised.'" (quoting Schonfeld v. Hilliard, 218 F.3d 164, 175 (2d Cir. 2000))). Consequential damages, on the other hand, "seek to compensate a plaintiff for additional losses (other than the value of the promised performance) that are incurred as a result of the defendant's breach." PNC Bank, 73 F. Supp. 3d at 370–71 (quoting Schonfeld, 218 F.3d at 175).

Saadeh argues that he is entitled to the repayment of the principal and interest of the loan; thus, he seeks only general damages. Saadeh asserts he is owed $130,000 in principal under the Loan Agreement. Saadeh Decl. ¶ 10; Am. Compl. ¶ 29. Because Saadeh has sufficiently established his breach of contract claim, I recommend that Plaintiff be awarded the outstanding principal on the Loan Agreement of $130,000.

Saadeh also asserts he is owed interest in three different forms: first, contractual interest calculated according to the rate in the Loan Agreement; second, statutory pre-judgment interest according to N.Y. CPLR § 5001; and third, additional interest that accrues "until full repayment is made," which the Court construes as a request for post-judgment interest. ECF No. 84 ¶¶ 10–15. In other words, the interest rate of the loan needs to be ascertained in three parts, the rate before the date of default (April 30, 2018), the rate after the loan became due until the date of the entry of final judgment, and the rate post-judgment until full repayment is made.

According to Saadeh's calculations, the total amount of contractual interest due is $6,368.22. Saadeh Decl. ¶ 10. The Loan Agreement stipulates that the annual interest rate before the loan became due was six percent. See id.; ECF No. 85, Ex. A. Because Saadeh extended the time for repayment of the loan to April 30, 2018, the interest rate provided for in the Loan Agreement accrued until that date. See Am. Compl. ¶¶ 12–15; Saadeh Decl. ¶ 6; ECF No. 85,

Ex. C. Therefore, as of April 30, 2018, Saadeh was owed interest totaling $6,368.22.[5] See Saadeh Decl. ¶ 10. Therefore, I recommend Saadeh be awarded $6,368.22 in contractual interest.

Statutory pre-judgment interest stems from N.Y. CPLR § 5001(a) and (b), which provide that "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract" and "shall be computed from the earliest ascertainable date the cause of action existed." The statutory interest rate in New York is nine percent. N.Y. CPLR § 5004. Accordingly, statutory interest at the rate of nine percent on the amount owed under the Loan Agreement as of April 30, 2018, would be appropriate. See, e.g., Diamond, 2019 WL 8955300, at *8–9.

Here, the second part of the interest calculation shall be computed at nine percent of the balance of the amount owed under the Loan Agreement, or $136,368.22, commencing April 30, 2018, or the date of accrual. See N.Y. CPLR § 5004; see also Saadeh Decl. ¶ 12. Therefore, I recommend Saadeh be awarded pre-judgment interest at a yearly rate of nine percent from the date of accrual, April 30, 2018, through the date of the entry of final judgment on the $136,368.22 owed on April 30, 2018.[6]

The third and final part of the interest Saadeh claims is any post-judgment interest that accrues until the full amount is repaid. ECF No. 84 ¶ 15. Although Saadeh suggests that interest shall accrue at the yearly rate of nine percent "until full repayment is made," that fails to distinguish between pre- and post-judgment interest. See Saadeh Decl. ¶ 14. Pursuant to 28 U.S.C. § 1961(a), "[i]nterest shall be allowed on any money judgment in a civil case recovered in

---

[5] The final amount is calculated as six percent per year for the 298 days from July 6, 2017, to April 30, 2018, or $130,000 x (6% x (298/365)).

[6] The statutory interest will continue to accrue on what is not paid at a daily rate of $33.625 (calculated as 9% of $136,368.22 divided by 365 days in a year) until the entry of judgment. See Saadeh Decl. ¶¶ 13–14.

a district court" and "[s]uch interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment." (footnote omitted). The "award of postjudgment interest is mandatory." Schipani v. McLeod, 541 F.3d 158, 165 (2d Cir. 2008) (citing Westinghouse Credit Corp. v. D'Urso, 371 F.3d 96, 100 (2d Cir. 2004)).

Because "[p]ost-judgment interest serves as a means to 'compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant,'" the Court finds such an award to be appropriate here. Westinghouse Credit Corp., 371 F.3d at 101–02 (quoting Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827, 835–36 (1990)).

## CONCLUSION

I recommend that the Court award Saadeh $130,000 in principle, plus $6,368.22 in contractual interest, for a total of $136,368.22. I further recommend that Saadeh be awarded pre-judgment statutory interest at an annual rate of nine percent, to be calculated on the full amount owed pursuant to the Loan Agreement, or $136,368.22, from the date of accrual to the date of the entry of final judgment, and post-judgment interest to accrue at the statutory rate.

SARAH NETBURN
United States Magistrate Judge

DATED:   July 20, 2021
         New York, New York

\*          \*          \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS
TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Engelmayer at the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Paul A. Engelmayer. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).