UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
         :
RAFIC SAADEH,         :
         :
         Plaintiff,    :    20 Civ. 1945 (PAE) (SN)
    -v-         :
         :    OPINION & ORDER
MICHAEL KAGAN, JOSHUA KAGAN, and  :
THE ESTATE OF IRVING KAGAN,         :
         :
         Defendants.  :
         X
------------------------------------------------------------------

PAUL A. ENGELMAYER, District Judge:

Currently pending is plaintiff Rafic Saadeh's motion for a preliminary injunction prohibiting defendants from taking certain actions with respect to the Estate of Irving Kagan (the "Estate"), to wit, distributing certain settlement funds recovered from litigation in the United Kingdom. Dkt. 130. Before the Court is the March 1, 2022 Report and Recommendation of the Hon. Sarah Netburn, United States Magistrate Judge, recommending that the Court grant the motion to the extent it is based on Federal Rule of Civil Procedure 69, and deny the motion to the extent it is based on Federal Rule of Civil Procedure 65. Dkt. 187 ("Report"). For the following reasons, the Court adopts this recommendation.

### I. Background

#### A. Relevant Factual and Procedural Background

The Court here adopts the Report's account of the facts and procedural history. The following summary captures the limited facts necessary for an assessment of the issues presented.

This case involves a $130,000 loan Saadeh made in 2017 to Irving Kagan, father of sons Michael Kagan and Joshua Kagan.[1] On January 12, 2020, Irving died—before he repaid Saadeh. On March 4, 2020, Saadeh brought claims in this Court to recoup the loan, and, on September 27, 2021, the Court granted a default judgment against Irving's Estate. *See* Dkt. 115. Saadeh is a judgment creditor of the Estate. The Estate, which appears to be managed by Michael, claims to have only two assets: (1) a house in Pennsylvania; and (2) an interest in fees due to Irving for his legal work in the United Kingdom. Principally at issue here are the latter assets. Saadeh alleges that, throughout this litigation, Michael and Joshua have engaged in a campaign of bad-faith tactics to divert those assets from the Estate—and therefore from Saadeh, as judgment creditor. *See* Dkt. 131. Specifically, Saadeh argues that Michael intends to divert the U.K. settlement funds to "third party" funders of the litigation—"third parties" that happen to include Joshua and other family members—leaving only the "net proceeds" to the Estate. *Id.*

On November 24, 2021, Saadeh moved for a preliminary injunction under Rule 65. Dkt. 130. In January 2022, Judge Netburn held a conference at which she expressed doubt that the motion was properly brought under Rule 65. *See* Report at 1. On February 2, 2022, Saadeh filed a request for temporary injunctive relief requesting an order (1) "restraining Michael Kagan and the Estate from allowing disbursement of any funds or recovery for the Estate in the U.K. litigation;" and (2) "requiring Michael Kagan and the Estate to collect and hold any such funds or recovery, without payment of any portion of it over to any ostensible lender to the Estate or other person claiming to have any interest in that recovery or claim against the Estate." Dkt. 165. That motion was brought under Rule 69 and New York Civil Practice Law and Rules ("CPLR") § 5222. On February 27, 2022, Saadeh moved to expedite his application for

---

[1] For clarity, the Court will refer to the Kagans by their first names.

2

temporary relief on the ground that Michael had signaled that he would imminently disburse the settlement funds. Dkt. 185. Joshua and Michael opposed the relief on the grounds that: (1) the Court lacked jurisdiction to enjoin conduct occurring in the U.K.; (2) Saadeh is entitled, at most, to net proceeds from the U.K. litigation settlement; and (3) CPLR § 5208 bars Saadeh's sought relief absent leave of the Surrogate's Court. *See* Dkts. 167–68, 186.

### B. The Report

On March 1, 2022, Judge Netburn issued her Report. It explained that Rule 69 provides that a federal money judgment can be enforced by a writ of enforcement in accord with the procedures of the forum state (here, New York), and that CPLR Section 5222 provides that a judgment creditor can obtain a restraining notice, which "serves as a type of injunction." Report at 3 (quoting *Aspen Indus. v. Marine Midland Bank*, 52 N.Y.2d 575, 579 (1981)). Saadeh, the Report reasoned, is a judgment creditor with a judgment over the Estate, and may therefore seek such a restraining notice over proper assets of the Estate. *Id.* (citing *Koehler v. Bank of Berm. Ltd.*, 12 N.Y.3d 533, 539–40 (2009)). The Report also stated that CPLR Section 5208 is inapplicable, as it describes limitations "after the death of a judgment debtor" that do not apply here, *id.*, because the judgment debtor is the *Estate* (meaning the death preceded entry of judgment). The Report also acknowledged the Court's inherent authority to take action to enforce its judgments, notwithstanding state procedures that might otherwise frustrate those efforts. *Id.* (quoting *Kashi v. Gratsos*, 712 F. Supp. 23, 25–26 (S.D.N.Y. 1989) ("New York's procedural law that requires a judgment creditor to obtain permission of the Surrogate's Court prior to enforcing a judgment against the estate of a deceased judgment debtor does not limit a federal district court's jurisdiction to enforce its judgments.")).

3

On these bases, the Report held that Saadeh was entitled to a restraining notice over certain assets of the Estate under CPLR Section 5222. It thus recommended granting Saadeh's motion under Rule 69. *Id.* at 4. Principally relevant here, the Report specified the limits of that recommendation:

> Plaintiff, however, has not met his burden of establishing that all of the proceeds of the U.K. litigation are necessarily Estate Assets. Michael Kagan represents that certain third-party lenders are entitled to funds from that litigation that are *dehors* the Estate. The record is unclear whether this is true. To the extent Plaintiff's position would seek to impose a restraining notice on parties not within the jurisdiction of the Court, such application should be denied. But any funds that are first held by the Estate should be restrained until further order by this Court. For the avoidance of doubt, this means that any funds that pass through the Estate, even for purposes of later distribution and even to secured creditors, are deemed "Estate Assets" for purposes of this order.

*Id.* To avoid prejudice, the Court entered a temporary restraining order enjoining the dissipation of Estate assets until further order from the Court. *Id.*

The Report then recommended denying Saadeh's motion to the extent it was based on Rule 65, as it found Rule 69 a better fit. *Id.* (citing *Shamrock Power Sales, LLC v. Scherer*, No. 12 Civ. 8959 (KMK) (JCM), 2016 WL 6102370, at *2 (S.D.N.Y. Oct. 18, 2016) ("[A] preliminary injunction under Rule 65 would be an inappropriate mechanism for seeking postjudgment relief, as the execution of judgments is governed by Rule 69.")).

Finally, the Report recommended denying Saadeh's motion to the extent it sought to enjoin Michael and Joshua in their individual capacities. *Id.* at 5.

On March 15, 2022, Michael filed a limited objection to the Report. Dkt. 201. In Michael's view, the Report's definition of "Estate Assets" as "any funds that pass through the Estate, even for purposes of later distribution and even to secured creditors" is overbroad. *Id.* at 1. Michael argues that a restraining notice under CPLR Section 5222 can apply only to assets in which the debtor has an interest (here, the Estate's actual assets), and is ineffective as to any

4

assets that may pass through the Estate but ultimately prove not to be its assets—including the portion of the settlement fund allegedly due to third-party litigation funders.

## II. Discussion

### A. Applicable Legal Standard

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When specific objections are made, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). "To accept those portions of the report to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." *Ruiz v. Citibank, N.A.*, No. 10 Civ. 5950 (KPF), 2014 WL 4635575, at *2 (S.D.N.Y. Aug. 19, 2014) (quoting *King v. Greiner*, No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009)); *see also, e.g., Wilds v. United Parcel Serv.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003).

### B. Objected-To Portion of the Report

Michael's objection to the Report is narrow. He does not take issue with the legality of the entry by this Court of a CPLR Section 5222 restraining notice under Rule 69 in this context. Nor does he dispute that such a notice may act on assets in which a judgment creditor like Saadeh has an interest. *See JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 295 F. Supp. 2d 366, 391 (S.D.N.Y. 2003) ("Restraining notices issued pursuant to § 5222 are effective against assets in which the judgment debtor has an 'interest,' and they 'only reach property and debts with such a connection to the judgment debtor.'" (quoting *AG*

5

*Worldwide v. Red Cube Mgmt. AG*, No. 01 Civ. 1228 (GEL), 2002 WL 417251, at *8 (S.D.N.Y. Mar. 15, 2002))).

Michael's concern instead is with the scope he perceives of the restraint recommended by the Report with respect to settlement proceeds from the U.K. litigation. He reads that restraint to reach, in addition to whatever portion of the settlement proceeds may properly owe to the Estate, any funds to which third parties have exclusive interest—over which a Section 5222 restraining notice may not issue. *See Amtrust N.A., Inc. v. Preferred Contractors Ins. Co. Risk Retention Grp., LLC*, No. 16-mc-0340, 2016 WL 6208288, at *5 (S.D.N.Y. Oct. 18, 2016) ("[T]o the extent a restraining notice purports to affect any property other than that of the judgment debtor, they are improper.").

The Report does no such thing. Indeed, it carefully circumscribes the reach of its recommended order to *carve out* assets not within the reach of Section 5222: "Michael Kagan represents that certain third-party lenders are entitled to funds from that litigation that are *dehors* the Estate. . . . To the extent Plaintiff's position would seek to impose a restraining notice on parties not within the jurisdiction of the Court, such application should be denied." Report at 4.

It is true that the Report recommends that "any funds that are *first* held by the Estate should be restrained until further order by this Court," meaning that "any funds that pass through the Estate, even for purposes of later distribution and even to secured creditors, are deemed 'Estate Assets' for purposes of th[e] order." *Id.* In theory, then, it may turn out that some portion of the restrained assets initially restrained pursuant to the Court's order ultimately will prove not to belong to the Estate. But, critically, that is because "[t]he record is unclear whether" as yet which assets held by the Estate will prove to belong to it. And it is undisputed that at least *some* of the U.K. settlement proceeds are Estate assets subject to the restraining notice. Notably,

6

Michael has not at any point—before or after the Report was issued—attempted to supplement the record in a way that would justify a more tailored restraint. Lacking a factual basis to modify the scope of the recommended restraint, the Court rejects Michael's objections and adopts the objected-to portion of the Report, to wit, the definition of "Estate Assets."

### C. Balance of the Report

As to the remaining conclusions of the Report—including the bottom-line recommendation that a restraining notice be entered under Rule 69 (but not Rule 65)—no party has submitted objections. Accordingly, as to those sections, review for clear error is appropriate. The Court finds none. The Report is therefore adopted in full.

### CONCLUSION

For the foregoing reasons, the Court grants plaintiff's motion for a preliminary injunction. The Clerk of Court is respectfully directed to terminate the motion at docket entry 130.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: September 9, 2022
        New York, New York