UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RAFIC SAADEH,

                              Plaintiff,

                    -v-

MICHAEL KAGAN et al.,

                              Defendants.

20 Civ. 1945 (PAE) (SN)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

This case involves efforts to collect on a loan for $130,000. Currently pending are a motion by the lender, plaintiff Rafic Saadeh, for partial summary judgment, Dkts. 175, 182–83, and motions for summary judgment by defendants Joshua Kagan and Michael Kagan, the sons of the borrower, *see* Dkts. 207–09 (Joshua); Dkts. 211–13 (Michael).[1] On December 16, 2022, the Honorable Sarah Netburn, United States Magistrate Judge, issued a Report and Recommendation (the "Report"). Dkt. 236 ("Report"). It recommended that the Court grant summary judgment in favor of Saadeh and against Michael on Saadeh's promissory estoppel claim and otherwise deny the motions for summary judgment. *See id.* On January 13, 2023, Michael, proceeding *pro se*, objected to the Report's recommendation as to the promissory estoppel claim. Dkt. 241 ("Obj.").[2] For the following reasons, the Court adopts the Report in full.

---

[1] For ease of reference, the Court refers to the Kagans by their first names.

[2] Joshua moved for additional time to consider whether he would object to the Report, *see* Dkt. 237, which the Court granted, Dkt. 238. He did not ultimately file objections.

I.     **Background**

    A.     **Factual Background**[3]

The Court adopts the Report's account of the facts and procedural history, to which no party has objected. The Court assumes familiarity with the Report and sets out here only the limited facts and procedural history necessary to assess the issues presented.

In June 2017, Saadeh loaned $130,000 to Irving Kagan, father of Michael and Joshua. Saadeh 56.1 ¶¶ 1–2; Michael 56.1 ¶¶ 5–6. The transaction was documented in a loan agreement, which provided that Irving repay the loan within six months of receipt of the money. Saadeh 56.1 ¶¶ 2–3; Michael 56.1 ¶¶ 6, 8. Between the disbursement of the loan in July 2017 and Irving's death in January 2020, Saadeh exchanged several emails with Michael and Irving regarding repayment of the loan. *See* Saadeh 56.1 ¶¶ 6–16; Michael 56.1 ¶¶ 14–46. On January 12, 2020, Irving died, without having repaid Saadeh. Saadeh 56.1 ¶ 5; Michael 56.1 ¶ 44; *see also* Michael Response ¶ 5.

---

[3] The factual account is drawn from Saadeh's Rule 56.1 statement, Dkt. 184 ("Saadeh 56.1"), Joshua's Rule 56.1 statement, Dkt. 210 ("Joshua 56.1"), Michael's Rule 56.1 Statement, Dkt. 214 ("Michael 56.1"), Michael's response to Saadeh's Rule 56.1 Statement, Dkt. 215 ("Michael Response"), and Saadeh's counterstatement, Dkt. 224 ("Saadeh Counterstatement"). The parties did not submit a joint statement of stipulated facts.

Citations to a party's Rule 56.1 statement incorporate by reference the materials cited therein. Where facts stated in a party's Rule 56.1 statement are supported by testimonial or documentary evidence, and denied by a conclusory statement by the other party without citation to conflicting testimonial or documentary evidence, the Court finds such facts true. *See* S.D.N.Y. Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); *id.* at 56.1(d) ("Each statement by the movant or opponent . . . controverting any statement of material fact[] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

On March 4, 2020, Saadeh filed suit in this Court to recoup the loan. Dkt. 4. On September 27, 2021, the Court entered a default judgment for Saadeh against Irving's estate in the amount of $178,265.02, with interest. *See* Dkt. 115. Saadeh is thus a judgment creditor of the estate.[4] Dkt. 234 at 2. After the Court granted in part and denied in part Michael's and Joshua's motions to dismiss, the parties made the pending motions for summary judgment: on February 23, 2022, Saadeh moved for partial summary judgment on the breach of contract and promissory estoppel claims against Michael, Dkts. 175, 182–83, and on April 28, 2022, Joshua and Michael moved for summary judgment, Dkts. 207–09 (Joshua); Dkts. 211–13 (Michael). On May 23, 2022, Saadeh opposed Joshua's and Michael's motions. Dkts. 219–23. On June 6, 2022, Joshua and Michael replied. Dkts. 231–33.

### B.     The Report

The Report recommends that the Court grant summary judgment in Saadeh's favor on his promissory estoppel claim against Michael and otherwise deny the balance of the motions.

As to the promissory estoppel claim, the Report finds that, although Michael's email to Saadeh in December 2017 did not constitute an unambiguous promise to repay the debt, his later emails to Saadeh constituted such promises. Report at 12–13. Moreover, the Report concludes that Saadeh relied on Michael's promises by choosing not to foreclose on defendants' properties and waiting until March 2020 to file suit, and that his reliance was reasonable in light of Irving's assurances and Saadeh's friendship with Irving. *Id.* at 13. The Report likewise finds that Saadeh established that his reliance on Michael's promise to repay the loan resulted in economic injuries to him, both because the loan remained outstanding and because Saadeh experienced "significant

---

[4] On September 9, 2022, the Court granted, to the extent the motion was based on Federal Rule of Civil Procedure 69, Saadeh's motion for a preliminary injunction prohibiting defendants from taking certain actions with respect to Irving's estate. *See* Dkt. 234.

financial distress" related to certain business in Lebanon as a result of the failure to repay the loan. *Id.*

The Report recommends denying summary judgment on the remaining claims at issue. As to the breach of contract claim against Michael, Judge Netburn concludes that the open question of "whether Michael unambiguously agreed to take on his father's debt in [his] email" to Saadeh in December 2017 precludes summary judgment for either side. *Id.* at 11. As to the constructive fraud claims under New York law, as to which both Joshua and Michael move, she finds that Joshua failed to produce sufficient corroborating evidence that Irving transferred money to him in repayment of a debt, or that such a transfer was made in good faith, *see id.* at 16–17; Michael failed to adduce evidence adequate to establish the fairness of his exchanges with Irving, *see id.* at 18; and neither Michael nor Joshua established Irving's lack of insolvency, *see id.* at 19. Similarly, Judge Netburn determined that Michael was not entitled to summary judgment on Saadeh's actual fraud claim against him, given that he provided many assurances that he would repay the loan but never did so. *See id.* at 20.

**II.     Discussion**

    **A.     Applicable Legal Standards**

        **1.     Legal Standards Governing a Report and Recommendation**

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). When specific objections are timely made, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). "To accept those portions of the report to which no timely objection has been

made, a district court need only satisfy itself that there is no clear error on the face of the record." *Ruiz v. Citibank, N.A.*, No. 10 Civ. 5950 (KPF) (RLE), 2014 WL 4635575, at *2 (S.D.N.Y. Aug. 19, 2014) (quoting *King v. Greiner*, No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009)); *see also, e.g.*, *Wilds v. UPS*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003).

To the extent that the objecting party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the Report and Recommendation strictly for clear error. *See Dickerson v. Conway*, No. 08 Civ. 8024 (PAE) (FM), 2013 WL 3199094, at *1–2 (S.D.N.Y. June 25, 2013); *Kozlowski v. Hulihan*, Nos. 09 Civ. 7583, 10 Civ. 0812 (RJH) (GWG), 2012 WL 383667, at *3 (S.D.N.Y. Feb. 7, 2012). "This is so even in the case of a *pro se* petitioner." *Perez v. Mason Tenders Dist. Council Tr. Funds*, No. 17 Civ. 1022 (PAE) (AJP), 2017 WL 5125542, at *2 (S.D.N.Y. Nov. 1, 2017), *aff'd*, 742 F. App'x 584 (2d Cir. 2018). Further, "[c]ourts generally do not consider new evidence raised in objections to a magistrate judge's report and recommendation." *Tavares v. City of New York*, No. 08 Civ. 3782 (PAE), 2011 WL 5877548, at *2 (S.D.N.Y. Nov. 23, 2011) (collecting cases).

### 2. Legal Standards Governing a Motion for Summary Judgment

The Court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of proving the absence of a question of material fact. In making this determination, the Court must view all facts "in the light most favorable" to the nonmoving party. *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008). If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaueser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for

summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks omitted). Rather, the non-moving party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).

### B. Objected-To Portion of the Report

Michael objects to the Report's recommendation that the Court grant summary judgment against him on Saadeh's promissory estoppel claim. Obj. at 1. Saadeh did not respond to these objections. The Court accordingly reviews *de novo* this portion of the Report, and, for the following reasons, adopts the recommendation to grant Saadeh's motion as to the promissory estoppel claim.

To establish a promissory estoppel claim, a plaintiff must demonstrate (1) the defendant's "clear and unambiguous promise," (2) upon which the plaintiff reasonably relied, (3) to his detriment. *NRP Holdings LLC v. City of Buffalo*, 916 F.3d 177, 202 (2d Cir. 2019). Although "a claim for promissory estoppel cannot be predicated on obligations arising out of a valid contract," a plaintiff "who allege[s] the existence of a valid contract may nonetheless plead the alternative theories of promissory estoppel and breach of contract when the defendant does not concede the enforceability of such contract." *Personal Watercraft Prod. SARL v. Robinson*, No. 16 Civ. 9771 (AJN), 2017 WL 4329790, at *11 (S.D.N.Y. Sept. 1, 2017) (citing cases) (citation omitted).

Largely for the reasons stated in the Report, the Court finds that Saadeh is entitled to summary judgment on his promissory estoppel claim against Michael. The undisputed evidence shows that, over the course of several emails to Saadeh, Michael characterized repayment of the loan as "truly my obligation," Saadeh 56.1 ¶ 8; Michael 56.1 ¶ 14, and made various statements—including requests for extension on the repayment deadline and updates regarding

his ability to repay the loan—clearly indicating that he personally would repay the loan made to his father by Saadeh. *See, e.g.*, Dkt. 183-2, Ex. C (December 20, 2017 email: requesting 90-day extension and stating, "I have, unfortunately, not yet been able to generate sufficient cashflow to satisfy the repayment of your loan—which is truly my obligation, not my father's (although knowing my father as you do, he feels responsible, in the end, for that repayment.)"); Dkt. 183-2, Ex. D (May 31, 2018 email: "I think it will be another 45 days before I will have the cashflow to return your generous loan."); Michael 56.1 ¶ 14; *id.* ¶ 19; *id.* ¶ 23 (July 2, 2018 email: "[I am in] negotiations to finalize the sums needed to repay the debt to you."); *id.* ¶ 26 (August 2, 2018 email: "Working with [colleague] basically on a daily basis to get the funds released, I expect to repay the debt shortly."); *id.* ¶ 31 (October 7, 2018 email: "Once I have a clearer idea of the deal's closing and the funds being made available, I will be back in touch."); *id.* ¶ 34 (November 7, 2018 email: "As soon as [a deal] is secured, I will have a better sense of the amount and timing of the cash flows that I will be using to repay the debt."); *id.* ¶ 39 (September 20, 2019 email: "I am making arrangements to begin repayment and expect to have it all repaid before the end of the year."); *id.* ¶ 44 (January 13, 2020 email: "[Irving] made me promise that whatever happened to him, I needed to make you whole."); *see also* Saadeh Counterstatement ¶¶ 14, 19, 23, 26, 31, 34, 39, 44; Dkt. 183-2, Ex. D (emails); Dkt. 183-2, Ex. E (emails).

Further, Saadeh has adduced unrefuted evidence that he reasonably relied on Michael's promise to repay the loan, given Michael's repeated assurances in these emails that he would repay the loan and what both parties characterize as a longstanding friendship between Saadeh and Irving, who was copied on many of the emails and assured Saadeh of the repayment. *See* Saadeh 56.1 ¶ 1 (Saadeh was Irving's "friend of many years"); Michael Response ¶ 1 (not disputing this representation); *see, e.g.*, Dkt. 183-4, Ex. D (Dec. 20, 2017 email, Saadeh to

7

Michael: "Irv friendship means a lot to me and I need him to be fully in the picture as well as his support and blessing."); Dkt. 183-2, Ex. C (Dec. 22, 2017 email, Irving to Saadeh: "I'm in agreement and grateful if the loan can be extended to April 2018 to enable Michael to handle it."); Dkt. 183-2, Ex. D (May 29, 2018 email, Irving to Saadeh: "[B]e assured this matter will be taken care of in any event."). And, given that the loan was not ultimately repaid and has accrued interest since its disbursement, Saadeh necessarily suffered economic injuries from his reliance on Michael's promise.

Michael's objections are unavailing. He argues that "there is no indication that I was personally responsible for repaying the loan as my involvement in the matter was due to my desire to assist my father in finding a resolution to the unpaid loan." Obj. at 1. Yet Michael's internal motivations with respect to Saadeh's loan are immaterial—Saadeh's claim instead turns on whether Michael made a "clear and unambiguous promise," *NRP Holdings*, 916 F.3d at 202, that he personally would repay the loan. And, as summarized above, he did make such a promise through his email correspondence with Saadeh, by representing that repayment of the loan was "truly my obligation, not my father's," Michael 56.1 ¶ 14; Dkt. 183-2, Ex. C, and thereafter making several reassurances about the anticipated repayment. *See, e.g.*, Dkt. 183-2; Dkt. 183-4.

For the same reason, Michael's argument that Saadeh "still considered my father to be the borrower and the one on whom he relied," Obj. at 2, also fails. While Michael is correct that Saadeh continued to communicate with Irving in discussing extensions for and following up on the repayment, Irving's involvement does not detract from the fact that Michael himself unambiguously promised to repay the loan and provided multiple reassurances to that effect. Indeed, Michael directly communicated with Saadeh regarding the status of the repayment and his intention to repay the debt, typically in terms suggesting that he alone was responsible for the

8

repayment. *Cf. Unicorn Crowdfunding Inc. v. New Street Enter., Inc.*, No. 18 Civ. 10110 (PAE), 2019 WL 2450911, at *5 (S.D.N.Y. June 12, 2019) (upholding promissory estoppel claim in part due to party's reasonable reliance on "multiple text messages, emails, and verbal assurances"). Saadeh thus reasonably relied on Michael to repay the loan. That Saadeh only brought suit after Irving died, *see* Obj. at 2 (suggesting that timing of suit indicates that Saadeh relied on Irving's representations, not Michael's), does not change the promissory estoppel analysis. The filing of this lawsuit may simply indicate that, with the loan at that point more than two years overdue, Saadeh had decided to seek legal relief. Indeed, had Saadeh considered Irving to be only person responsible for repaying the loan, he would not have brought a promissory estoppel claim against Michael at all, and presumably would instead have limited his claims as against Irving's estate.

Finally, Michael highlights that he was not a party to the initial loan agreement and asserts that he should not be held liable for Irving's failure to repay the loan and any additional damages incurred by Saadeh due to political and regulatory conditions in Lebanon, where Saadeh conducts business. Obj. at 2. Yet these objections do not address the Report's finding that Michael made repeated promises to repay the loan through his emails to Saadeh, upon which Saadeh reasonably relied, to his detriment, and that Michael can thus be held liable under a promissory estoppel theory. *See* Report at 12–14. Quasi-contract claims like promissory estoppel exist to address exactly such unfulfilled promises, however unfair the circumstances may appear to a promisor, like Michael, who did not sign any formal contract.

### C. Balance of the Report

No parties have objected to the Report's recommendation to deny the balance of the summary judgment motions. Accordingly, as to those sections, review for clear error is appropriate. Finding none, the Court adopts those conclusions.

## CONCLUSION

For the foregoing reasons, the Court adopts the Report in full, grants summary judgment in Saadeh's favor on the promissory estoppel claim, and denies the balance of the summary judgment motions. The Clerk of Court is directed to terminate the motions pending at dockets 182, 207, and 211.

Barring settlement, the case will now proceed to trial on the unresolved claims. The parties are directed to file, by April 21, 2023, a joint pretrial order and motions *in limine* in accordance with the Court's Individual Rules and Practices. Oppositions to motions *in limine* are due on April 28, 2023. Upon receipt of the joint pretrial order, the Court will schedule a prompt conference to, *inter alia*, set a trial date and resolve the motions *in limine*.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: March 31, 2023
       New York, New York