UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RAFIC SAADEH

Plaintiff,

-v-

JOSHUA KAGAN,

Defendant.

---

20-CV-3401 (PAE)

ORDER

PAUL A. ENGELMAYER, District Judge:

Attached to this Order are the following Court Exhibits:

- Exhibit A: The draft jury charge dated November 14, 2023.

- Exhibit B: The draft verdict form from November 14, 2023.

- Exhibit C: The verdict form from July 13, 2023.

- Exhibit D: The final jury charge read into the record on July 13, 2023.

- Exhibit E: The witness list.

- Exhibit F: The exhibit list.

- Exhibit G: An email from plaintiff's counsel to chambers regarding Jury Note 3.

- Exhibit H: The Court's response to Jury Note 3.

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: November 16, 2023
       New York, New York

**COURT EXHIBIT A**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RAFIC SAADEH,

                Plaintiff,

        -v-

JOSHUA KAGAN,

                Defendant.

---

20 Civ. 1945 (PAE)

PAUL A. ENGELMAYER, District Judge:

**Jury Charge**
**Draft for charge conference: November 14, 2023**

TABLE OF CONTENTS

I.   GENERAL INSTRUCTIONS ......................................................................................... 1

   A.   Introductory Remarks ...................................................................................... 1

   B.   Role of the Court .............................................................................................. 2

   C.   Role of the Jury ................................................................................................ 2

   D.   Role of Counsel / Objections and Sidebars ..................................................... 2

   E.   Sympathy or Bias ............................................................................................. 3

   F.   What Is and Is Not Evidence ............................................................................ 4

   G.   Direct and Circumstantial Evidence ................................................................ 5

   H.   Witness Credibility .......................................................................................... 6

   I.   Interested Witnesses ......................................................................................... 8

   J.   Preparation of Witnesses [IF APPLICABLE] ................................................ 9

   M.   All Available Evidence Need Not Be Produced .............................................. 9

   N.   Burden of Proof ............................................................................................... 9

II.   SUBSTANTIVE CHARGES ...................................................................................... 11

   A.   Overview of Claims ....................................................................................... 11

   B.   Fraudulent Conveyance Generally ................................................................ 11

   C.   Constructive Fraudulent Conveyance Under DCL § 273 .............................. 11

   D.   Constructive Fraudulent Conveyance Under DCL § 274 .............................. 15

   E.   Damages ......................................................................................................... 16

III.   DELIBERATIONS OF THE JURY ............................................................................ 17

   A.   Right to See Exhibits and Hear Testimony ................................................... 17

   B.   Communication with the Court ...................................................................... 18

   C.   Notes .............................................................................................................. 18

   D.   Duty to Deliberate; Unanimous Verdict ....................................................... 19

   E.   Verdict Form .................................................................................................. 19

   F.   Duties of Foreperson ..................................................................................... 19

   G.   Return of Verdict ........................................................................................... 20

IV.   CONCLUSION ........................................................................................................ 20

I.   **GENERAL INSTRUCTIONS**

   A.   **Introductory Remarks**

Members of the jury, you have now heard all of the evidence in the case, and you will soon hear the final arguments of the parties.  You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict in the case.

Now it is time for me to instruct you as to the law that governs the case.  There are three parts to these instructions.  First, I'm going to give you some general instructions about your role, and about how you are to decide the facts of the case.  These instructions really would apply to just about any trial.  Second, I'll give you some specific instructions about the legal rules applicable to this particular case.  Third, after counsel's closing arguments, I'll give you some final instructions about procedure.

Listening to these instructions may not be easy.  It is important, however, that you listen carefully and concentrate.  I ask you for patient cooperation and attention.  You'll notice that I'm reading these instructions from a prepared text.  It would be more lively, no doubt, if I just improvised.  But it's important that I not do that.  The law is made up of words, and those words are very carefully chosen.  So when I tell you the law, it's critical that I use exactly the right words.

You'll have copies of what I'm reading in the jury room to consult, so don't worry if you miss a word or two.  But for now, listen carefully and try to concentrate on what I'm saying.  I will be distributing to you a verdict form, in which to record your verdict.  It will list the questions that you must consider, in the order that you should consider them.

1

**B.      Role of the Court**

My duty at this point is to instruct you as to the law.  It is your duty to accept these instructions of law and to apply them to the facts as you determine them.  With respect to legal matters, you must take the law as I give it to you.  If any attorney has stated, or states, a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.  You must not substitute your own notions or opinions of what the law is or ought to be.

**C.      Role of the Jury**

As members of the jury, you are the sole and exclusive judges of the facts.  You pass upon the evidence.  You determine the credibility of the witnesses.  You resolve such conflicts as there may be in the testimony.  You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

Although you are encouraged to use all of your life experiences in analyzing testimony and reaching a fair verdict, you may not communicate any personal or professional expertise you might have or other facts not in evidence to the other jurors during deliberations.  You must base your discussions and decisions solely on the evidence presented to you during the trial and that evidence alone.  You may not consider or speculate on matters not in evidence or matters outside the case.

**D.      Role of Counsel / Objections and Sidebars**

It is the duty of the attorneys to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible.  It is my job to rule on those objections.  Therefore, why an objection was made or why I ruled on it the way I did is not your concern.  You should draw no inference from the fact that an attorney objected to any evidence.

Nor should you draw any inference from the fact that I might have sustained or overruled an objection.  Simply because I have permitted certain evidence to be introduced does not mean that I have decided on its significance.  That is for you to decide.

From time to time, the lawyers and I had conferences out of your hearing.  These conferences involved procedural and other matters, and none of the events relating to these conferences should enter into your deliberations at all.

Similarly, the personalities and the conduct of counsel in the courtroom are not in any way at issue.  If you formed reactions of any kind to any of the lawyers in the case, favorable or unfavorable, whether you approved or disapproved of their behavior as advocates, those reactions should not enter into your deliberations.

### E.      Sympathy or Bias

You are to evaluate the evidence calmly and objectively, without prejudice or sympathy. You are to be completely fair and impartial.  Your verdict must be based solely on the evidence developed at this trial, or the lack of evidence.  The parties in this case are entitled to a trial free from prejudice and bias.  Our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

It would be improper for you to consider, in deciding the facts of the case, any personal feelings you may have about the race, national origin, sex or age of any witness, or any other such irrelevant factor.  This case should be decided by you as an action between parties of equal standing in the community, and of equal worth.  All parties are entitled to the same fair trial at your hands.  All parties stand equal before the law, and are to be dealt with as equals in this Court.

### F.      What Is and Is Not Evidence

I want to take a moment to describe to you what is and is not evidence in this case.  As I have said, you may rely only on the evidence in your deliberations.  The evidence in this case is the sworn testimony of the witnesses, and the exhibits received in evidence.  On the other hand, certain things are not evidence.

First, I will describe a list of examples of things that are not evidence:

1.      A question by a lawyer is not to be considered by you as evidence.  It is the witnesses' answers that are evidence, not the questions.  At times, a lawyer may have incorporated into a question a statement which assumed certain facts to be true, and asked the witness if the statement was true.  If the witness denied the truth of a statement, and if there is no direct evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the lawyer's question.

2.      Similarly, arguments by lawyers are not evidence, because the lawyers are not witnesses.  What they have said in their opening statements was intended, and what they will say to you in their closing statements will be intended, to help you understand the evidence and to reach your verdict.  However, if your recollection of the facts differs from the lawyers' statements, it is your recollection which controls.

3.      Statements that I may have made concerning the evidence do not constitute evidence.  Similarly, at times, I may have admonished a witness or directed a witness to be responsive to questions or to keep his or her voice up.  At times, I may have asked a question myself.  Any questions that I asked, or instructions that I gave, were intended only to clarify the presentation of evidence and to bring out something that I thought might be unclear.  You should draw no inference or conclusion of any kind, favorable or unfavorable, with respect to any witness or any party in the case, by reason of any comment, question, or instruction of mine.  Nor should you infer that I have any views as to the credibility of any witness, as to the weight of the evidence, or as to how you should decide any issue that is before you.  That is entirely your role.

4.      Testimony that has been stricken or excluded is not evidence, and it may not be considered by you in rendering your verdict.

5.      Anything you may have seen or heard outside the courtroom is not evidence.

Now, I will provide you with some things that you may consider as evidence.  As I have

said, evidence may come in several forms:

1.    The sworn testimony of witnesses, regardless of who called them, is
      evidence.  This is true of the witnesses' answers on both direct and cross
      examination.  However, if certain testimony was received for a limited
      purpose, you must follow the limiting instructions I have given.

2.    The exhibits that were admitted during the trial are evidence.  Exhibits
      marked for identification but not admitted are not evidence, nor are
      materials brought forth only to refresh a witness's recollection.

3.    Prior testimony is evidence.  Such testimony, known as depositions, is
      produced through a procedure where, prior to trial, the attorneys for one
      side may question a witness or an adversary under oath.  This is part of
      what is called pretrial discovery, and each side is entitled to take
      depositions.  To the extent I admitted excerpts of prior testimony at trial,
      you may consider the prior testimony of a witness according to the same
      standards you would use to evaluate the testimony of a witness given at
      trial.

**G.    Direct and Circumstantial Evidence**

Generally, as I told you in my initial instructions, there are two types of evidence that you

may consider in reaching your verdict.  One type of evidence is direct evidence.  Direct evidence

is testimony by a witness about something he or she knows by virtue of his or her own senses—

something he or she has seen, felt, touched, or heard.  For example, if a witness testified that

when she left her house this morning, it was raining, that would be direct evidence about the

weather.

Circumstantial evidence is evidence from which you may infer the existence of certain

facts.  To use the same example I gave you at the start of trial:  Assume that when you came into

the courthouse this morning, the sun was shining and it was a nice day.  Assume that the

courtroom blinds were drawn and you could not look outside.  As you were sitting here, someone

walked in with an umbrella, which was dripping wet.  Then a few minutes later another person

entered with a wet raincoat.  Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining, and no one has testified that it is raining.  So you have no direct evidence of that fact.  But on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence.  You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact.  Many facts, such as a person's state of mind or intentions, are rarely susceptible of proof by direct evidence.  Usually, such facts are established by circumstantial evidence.  Where circumstantial evidence is presented, it is of no less value than direct evidence, for it is a general rule that the law makes no distinction between direct evidence and circumstantial evidence.

### H.    Witness Credibility

You have had the opportunity to observe the witnesses.  It is now your job to decide how believable each witness was in his or her testimony.  You are the sole judge of the credibility of each witness and of the importance of his or her testimony.

In making these judgments, you should carefully scrutinize the testimony of each witness, the circumstances under which each witness testified, the impression the witness made when testifying, and any other matter in evidence which may help you decide the truth and the importance of each witness's testimony.

How do you determine where the truth lies?  You watched each witness testify. Everything a witness said or did on the witness stand counts in your determination.  How did the witness impress you?  Did he or she appear to be frank, forthright, and candid?  Or was the witness evasive and edgy, as if hiding something?  How did the witness appear?  What was his

or her demeanor—that is, his or her carriage, behavior, bearing, manner, and appearance while testifying?  Often it is not what a person says but how he or she says it that moves us.

You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life.  You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case.  You should consider the opportunity the witness had to see, hear, and know the things about which he or she testified, the accuracy of his or her memory, his or her candor or lack of candor, his or her intelligence, the reasonableness and probability of his or her testimony and its consistency or lack of consistency and its corroboration or lack of corroboration with other credible testimony.

In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given, and all of the other evidence in the case.  Always remember that you should use your common sense, your good judgment, and your everyday experiences in life to make your credibility determinations.

If you find that any witness has willfully testified falsely as to any material fact—that is, as to an important matter—the law permits you to disregard the entire testimony of that witness upon the principle that one who testifies falsely about one material fact is likely to testify falsely about everything.  However, you are not required to consider such a witness as totally "unbelievable."  You may accept so much of the witness's testimony as you deem true and disregard what you feel is false.  By the processes which I have just described, you, as the sole judges of the facts, decide which of the witnesses you will believe, what portion of each witness's testimony you accept, and what weight you will give to it.

7

[**IF APPLICABLE**] On some occasions during this trial, witnesses were asked to explain an apparent inconsistency between testimony offered at this trial and previous statements made by the witness.  It is for you to determine whether a prior statement was inconsistent, and if so, how much (if any) weight to give to an inconsistent statement in assessing the witness's credibility at trial.

## I.      Interested Witnesses

In deciding whether to believe a witness, you should take into account any evidence that shows that a witness may benefit in some way from the outcome of the case, such as a financial interest.  Likewise, you should specifically note any evidence of hostility or affection that the witness may have towards one of the parties.  You should also consider any other interest or motive that the witness may have in cooperating with a particular party.

It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony.  In short, if you find that a witness is biased, you should view his or her testimony with caution, weigh it with care, and subject it to close and searching scrutiny.

An interested witness is not necessarily less believable than a disinterested witness.  The mere fact that a witness is interested in the outcome of the case does not mean he or she has not told the truth.  It is for you to decide from your observations and applying your common sense and experience and all the other considerations mentioned, whether the possible interest of any witness, or of any party, has intentionally or otherwise colored or distorted his or her testimony. You are not required to believe an interested witness; you may accept as much of his or her testimony as you deem reliable and reject as much as you deem unworthy of acceptance.

### J.        Preparation of Witnesses [IF APPLICABLE]

You have heard evidence during the trial that witnesses had discussed the facts of the case and their testimony with the lawyers before the witnesses appeared in court.  Although you may consider that fact when you are evaluating a witness's credibility, I should tell you that there is nothing either unusual or improper about a witness meeting with lawyers before testifying, so that the witness can be made aware of the subjects that he or she will be questioned about, focus on those subjects, and have the opportunity to review relevant exhibits before being questioned about them.  In fact, it would be unusual for a lawyer to call a witness without such consultation. Again, the weight you give to the fact or the nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion.

### M.       All Available Evidence Need Not Be Produced

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters in issue at this trial.  Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence in this case.

Each party has had an equal opportunity or lack of opportunity to call any witnesses. Therefore, you should not draw any inferences or reach any conclusions as to what any uncalled witnesses would have testified to had they been called.  The absence of any witnesses should not affect your judgment in any way.

### N.        Burden of Proof

In general, the plaintiff, Rafic Saadeh, has the burden of proving all the elements of his claims by a preponderance of the evidence.  There are exceptions to this which I will cover later

when I discuss the particular claims, but in general Mr. Saadeh has the burden to prove his claims by a preponderance of the evidence.

What does a "preponderance of the evidence" mean?  To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not.  A preponderance of the evidence means the greater weight of the evidence.  It refers to the quality and persuasiveness of the evidence, not the number of witnesses or documents.  In determining whether a claim has been proven by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.

If, after considering all of the testimony, you are satisfied that the party with the burden of proof has carried his burden on each essential point of his claim, then you must find in that party's favor.  If, after such consideration, you find that the evidence produced by a party is outweighed by the evidence against that party's position, or that the credible evidence on a given issue is evenly divided between the parties—that it is as equally probable that one side is right as it is that the other side is right—then you must decide that issue against the party bearing the burden of proof on that issue.  That is because when a party bears the burden of proof he must therefore prove more than simple equality of evidence—he must prove the element by a preponderance of the evidence.  On the other hand, a party bearing the burden of proof by a preponderance of the evidence need prove no more than a preponderance.  So long as you find that the scales tip, however slightly, in favor of that party—that what he claims is more likely true than not—then that element will have been proven by a preponderance of the evidence.

Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof only in a *criminal* trial.  That requirement does not apply to a civil case such as this, and you should put it out of your mind.

## II.   SUBSTANTIVE CHARGES

I am now going to instruct you on the substantive law to be applied to the plaintiff's claims in this lawsuit.

### A.   Overview of Claims

The plaintiff, Rafic Saadeh, brings two claims against Joshua Kagan.

The plaintiff's claims are both for what is called constructive fraudulent conveyance under New York state law.  I am first going to describe the concept of fraudulent conveyance. Then I will set out the elements of the two claims.

### B.   Fraudulent Conveyance Generally

What is a fraudulent conveyance?  Broadly speaking, a fraudulent conveyance is a transfer of money made by a person to place that money out of the reach of creditors.  A constructive fraudulent conveyance involves a transfer made under certain objective circumstances that the law has deemed indicative of fraud.

### C.   Constructive Fraudulent Conveyance Under DCL § 273

The plaintiff Mr. Saadeh's first claim of constructive fraudulent conveyance is under New York Debtor-Creditor Law, or DCL, § 273.

To find for the plaintiff on this claim, you must find that he has established each the following four elements: first, that the plaintiff Mr. Saadeh made a loan to Irving Kagan, making the plaintiff a creditor of Irving Kagan; second, that, after receiving a loan from the plaintiff, Irving Kagan transferred funds to the defendant Joshua Kagan that were proceeds of Mr.

Saadeh's loan; third, that Irving Kagan did not receive fair consideration in exchange for the funds transferred to Joshua Kagan; and fourth, that Irving Kagan was insolvent at the time of the transfer or transfers to Joshua Kagan, or that the transfer or transfers to Joshua Kagan rendered Irving Kagan insolvent.

Each of these elements must be established for the plaintiff to prevail on this claim. If any one element is lacking, the plaintiff's claim fails and you must find for the defendant.

### 1.      First Element:  Loan from Mr. Saadeh to Irving Kagan

To find for the plaintiff on this element, he must prove by a preponderance of the evidence that he loaned money to Irving Kagan.

This point is undisputed: the parties agree that on or about July 6, 2017, Rafic Saadeh lent $130,000 to Irving Kagan. I instruct you that you must find this element established.

### 2.      Second Element:  Transfers from Irving Kagan to Joshua Kagan

To find for the plaintiff on this element, he must prove by a preponderance of the evidence that Irving Kagan transferred funds to Joshua Kagan which were proceeds of the loan Irving Kagan had received from Mr. Saadeh.

As to this element, the plaintiff alleges that, during the period between July 6, 2017 and the end of August 2017, Irving Kagan transferred funds to Joshua Kagan which were proceeds of the loan from Mr. Saadeh and which totalled between $59,000 and $60,000.

### 3.      Third Element:  Lack of Fair Consideration

A constructive fraudulent conveyance is a transfer made without receiving fair consideration in return. For there to be fair consideration, you must find three things: (1) first, that Joshua Kagan either conveyed property in exchange for the funds he received from Irving Kagan, or that the funds Joshua Kagan received from Irving Kagan were to discharge a past debt

(known as an "antecedent debt") that Irving Kagan owed Joshua Kagan; (2) second, that the sum that Joshua Kagan received from Irving Kagan was the "fair equivalent" of what Joshua Kagan either gave Irving Kagan in exchange or had been owed by Irving Kagan to Joshua Kagan based on an antecedent debt; and (3) third, that Irving Kagan's transfer to Joshua Kagan was made in good faith.

In general, as I said earlier, it is Mr. Saadeh's burden to prove the elements of his case by a preponderance of the evidence. But, as I also said earlier, there are exceptions. One of them applies to the element of the lack of fair consideration. Under the law, in the case of intra-family transfers, meaning a transfer from one family member to another, the burden of proof shifts to the defendant to show that there was fair consideration. It is undisputed in this case that Irving Kagan and Joshua Kagan were members of the same family. And so, the burden is on Joshua Kagan to establish by a preponderance of the evidence that there was fair consideration for any money transferred from Irving Kagan to him. If Joshua Kagan fails to establish that, you must find this element in favor of the plaintiff.

As I said earlier, there are two ways in which fair consideration can be shown by the person who received the funds. He may show either that funds were part of an exchange; or that that funds were to discharge an antecedent debt. To the extent that the recipient argues that certain property was fair consideration in an exchange, he must show that that property was exchanged contemporaneously with the transfer or transfers to him that are alleged to have been fraudulent. To the extent that the recipient argues that fair consideration exists because the transfer or transfers to him discharged an antecedent debt, he must show that that debt was incurred before the transfer at issue, and that the transfer paid down the antecedent debt either partially or in full. Either way, fair consideration is present only where the consideration alleged

was the fair equivalent of the transfer made.  A transfer is the fair equivalent of either property exchanged or the amount of the debt forgiven if the two are about equal in value.

As to this element, Joshua Kagan argues that the funds that Irving Kagan transferred to him in the two months after Irving Kagan had received the loan from Mr. Saadeh were paid to him to discharge part of an earlier, or antecedent, debt that Irving Kagan owed to him.  That debt, he states, arose because Joshua Kagan had earlier paid a landlord back rent due of Michael Kagan on behalf of Irving Kagan who was a guarantor on Michael's apartment lease..

Finally, to constitute fair consideration a payment must have been made in good faith. Good faith refers to honest, fair, and open dealings.  Good faith can be established by showing that the transferee, meaning Joshua Kagan, possessed an honest belief in the propriety of the transfer in question, that the transferee had no intention to take unconscionable advantage of others, and that the transferee had no intent to hinder, delay, or defraud others, and had no knowledge of the possibility that the transfer in question would hinder, delay, or defraud others.

### 4.  Insolvency

Finally, for there to be a constructive fraudulent conveyance under DCL § 273, you must find that Irving Kagan was insolvent at the time the transfer to Joshua Kagan was made, or that the transfer rendered Irving Kagan insolvent.  If you find that there was not fair consideration for the transfer, there is a presumption that Irving Kagan was insolvent at the time of the transfer. And so, if you find a lack of consideration, Joshua Kagan bears the burden of showing, by a preponderance of the evidence, that Irving Kagan was solvent.

A person is insolvent when the fair salable value of his assets at the time of the allegedly fraudulent transfer was less (or was rendered less by the transfer) than the amount required to

pay his outstanding debts.  Inversely, a person is solvent if he has enough assets to pay all outstanding liabilities he owes even after the transfer at issue.

### D.      Constructive Fraudulent Conveyance Under DCL § 274

The plaintiff Mr. Saadeh's second claim of constructive fraudulent conveyance is under New York Debtor-Creditor Law, or DCL, § 274.

There are four elements to this claim.  For the plaintiff to prevail on this claim, you must find all four elements in his favor.

The first three elements are identical in every respect to the first three elements under the plaintiff's first claim, under DCL § 273.  And so, your earlier findings as to the first three elements equally apply to this claim.  Again, the first three elements are, first, that there was a loan from Mr. Saadeh to Irving Kagan; second, that Irving Kagan transferred proceeds of that loan to Joshua Kagan; and third, that there was not fair consideration for that transfer or transfers.  And so, if you have found each of these elements in the plaintiff's favor on the first claim, under DCL § 273, you should find them here too, and proceed to the fourth element of DCF § 274.  If, however, on the first claim, you have found any of these elements not to be in plaintiff's favor, those findings equally apply to the second claim, under DCL § 274, and you must return a verdict to the defendant on the second claim, under DCL § 274.

The only different element between plaintiff's two claims is the fourth element.  To establish the fourth element under DCL § 274, the plaintiff must show by a preponderance of the evidence that at the time of Irving Kagan's alleged fraudulent transfers to Joshua Kagan, Irving Kagan had unreasonably small capital to engage in business or a transaction in which he was then engaged, or that he was imminently to become engaged.  The business or transaction at issue here is the repayment to Mr. Saadeh of the $130,000 he lent to Irving Kagan.  And so, to

establish this element, the plaintiff must establish by a preponderance of the evidence that, at the time of the transfer or transfers to Joshua Kagan, Irving Kagan was engaged or was about to engage in business dealings or a transaction with Mr. Saadeh, meaning the repayment of the loan, and that Irving Kagan's transfer or transfers to Joshua Kagan left him with unreasonably small capital to engage in those dealings or that transaction.

Again, as with the first claim, all four elements must be established for the plaintiff to prevail on the § 274 constructive fraudulent conveyance claim. If any one element is lacking, the plaintiff's claim fails and you must find for the defendant.

### E.      Damages

If, but only if, you conclude that the plaintiff Mr. Saadeh has met his burden of proving liability, that is, you have found each of the elements of either or both of his claims according to the instructions I have given you, then you must determine the damages, if any, to which the plaintiff is entitled.

You should not infer that the plaintiff is entitled to recover damages merely because I am instructing you on how to calculate damages. It is exclusively your function to decide upon liability. I am instructing you on damages only so that you will have guidance should you decide that they are warranted.

If you find that the plaintiff has established either of his constructive fraudulent conveyance claims, there are two separate calculations I will ask you to make, which will assist the Court in determining the amount of damages, if any, the plaintiff is due. There is a separate line on the verdict form for each of these.

First, you are to calculate the sum total of the transfer or transfers of funds that you find that Irving Kagan transferred to Joshua Kagan that were proceeds of Mr. Saadeh's loan. Again,

the plaintiff alleges that between $59,000 and $60,000 of proceeds of the loan were transferred by Irving Kagan to Joshua Kagan between July 6, 2017 and the end of August 2017.  The plaintiff Mr. Saadeh bears the burden of proving that a particular transfer to Joshua Kagan was a proceed of his loan to Irving Kagan.

Second, you are to calculate the net amount of money that Joshua Kagan paid to Irving Kagan after the transfers to him of proceeds of the loan from Mr. Saadeh.  That is because, under the law, Joshua Kagan may be entitled to offset his damages by any net repayment he made to Irving Kagan.  In calculating this figure, you are to add up the payments that Joshua Kagan paid to Irving Kagan after receiving the proceeds of the loan from Mr. Saadeh.  You are separately to add up the payments, if any, that Irving Kagan later made to Joshua Kagan other than from proceeds of the loan from Mr. Saadeh.  You are then to subtract the latter from the former.  If you find that Joshua Kagan made a net repayment to his father after receiving proceeds of the loan Irving Kagan had recovered from Mr. Saadeh, you are to write that figure in the second line under damages in the verdict form.  It is Joshua Kagan's burden, by a preponderance of the evidence, to establish any such net repayment by him to Irving Kagan.

## III.    DELIBERATIONS OF THE JURY

### A.    Right to See Exhibits and Hear Testimony

Members of the jury, now that you have heard the closing arguments of the parties, you are about to go into the jury room to begin your deliberations. Before you do that, I will give you a few final instructions.

The exhibits received in evidence will be accessible to you upon request.  If during those deliberations you want to see a hard copy of any of the exhibits, you may request that they be brought into the jury room.  If you want any of the testimony read, you may also request that.

Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting exhibits or portions of the testimony.  And please be patient—with respect to requests for testimony, it can sometimes take counsel and the Court some time to identify the portions that are responsive to your request.  If you want any further explanation of the law as I have explained it to you, you may also request that.

To assist you in your deliberations, I will be providing you a list of the exhibits; a list of the witnesses who testified, in the order in which they testified; a verdict form, which I have referred to and which I will discuss in a moment; and a copy of these instructions.  There is one of each of these for each juror.

### B.      Communication with the Court

Your requests for exhibits or testimony—in fact any communications with the Court—should be made to me in writing, signed by your foreperson, and given to one of the marshals.  In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

### C.      Notes

Some of you have taken notes periodically throughout this trial.  I want to emphasize to you, as you are about to begin your deliberations, that notes are simply an aid to memory.  Notes that any of you may have made may not be given any greater weight or influence than the recollections or impressions of other jurors, whether from notes or memory, with respect to the evidence presented or what conclusions, if any, should be drawn from such evidence.  All jurors' recollections are equal.  If you can't agree on what you remember the testimony was, you can ask to have the transcript read back.

### D.      Duty to Deliberate; Unanimous Verdict

You will shortly retire to decide the questions I have described to you.  For the plaintiffs to prevail on the questions that you must answer, they must sustain their burden of proof as I have explained to you with respect to the questions you are considering.  Your verdict on each question must be unanimous.

Each juror is entitled to his or her opinion, but you are required to exchange views with your fellow jurors.  This is the very essence of jury deliberation.  It is your duty to discuss the evidence.  If you have a point of view and after reasoning with other jurors it appears that your own judgment is open to question, then of course you should not hesitate in yielding your original point of view if you are convinced that the opposite point of view is really one that satisfies your judgment and conscience.  You are not to give up a point of view, however, that you conscientiously believe in simply because you are outnumbered or outweighed.  You should vote with the others only if you are convinced on the evidence, the facts, and the law that it is the correct way to decide the case.  You are not to discuss the case until all jurors are present.  Five or six jurors together is only a gathering of individuals.  Only when all eight jurors are present do you constitute a jury, and only then may you deliberate.

### E.      Verdict Form

I have prepared a verdict form for you to use in recording your decision as to the plaintiff's claims.  Please use those forms to report your verdict.

### F.      Duties of Foreperson

Finally, I referred a moment ago to a foreperson.  The first thing you should do when you retire to deliberate is take a vote to select one of you to sit as your foreperson, and then send out a note indicating whom you have chosen.

The foreperson doesn't have any more power or authority than any other juror, and his or her vote or opinion doesn't count for any more than any other juror's vote or opinion. The foreperson is merely your spokesperson to the court. He or she will send out any notes, and when the jury has reached a verdict, he or she will notify the marshal that the jury has reached a verdict, and you will come into open court and give the verdict.

### G.    Return of Verdict

After you have reached a verdict, your foreperson will fill in and date the form that has been given to you. All jurors must sign the form reflecting each juror's agreement with the verdict. The foreperson should then advise the marshal outside your door that you are ready to return to the courtroom.

I will stress that each of you must be in agreement with the verdict which is announced in court. Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

In conclusion, members of the jury, I am sure that if you listen to the views of your fellow jurors and if you apply your own common sense, you will reach a fair verdict here.

## IV.    CONCLUSION

Members of the jury, that concludes my instructions to you. I will ask you to remain seated while I confer with the attorneys to see if there are any additional instructions that they would like me to give to you or anything I may not have covered in my previous statement.

* * * * *

Members of the jury, you may now retire. The marshal will be sworn before we retire.

(Marshal sworn)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------------------------------------X
                                                   :
RAFIC SAADEH,                                      :
                                                   :
                              Plaintiff,           :            20  Civ. 1945 (PAE)
                    -v-                             :
                                                   :
JOSHUA KAGAN,                                      :
                                                   :
                              Defendant.           :
                                                   :
----------------------------------------------------------------------- X
```

**VERDICT FORM**

Instructions:  When answering the following questions and filling out this Verdict Form, please answer the questions in the sequence in which they appear, and follow the directions provided in this form.  Your answer to each question must be unanimous.  Please refer to the Jury Charge for guidance on the law applicable to the subject matter covered by each question.

**Liability**

1.  Do you find in favor of Mr. Saadeh on his constructive fraudulent conveyance claim brought against Joshua Kagan under New York DCL § 273?

            \_\_\_\_\_ YES     \_\_\_\_\_ NO

2.  Do you find in favor of Mr. Saadeh on his constructive fraudulent conveyance claim brought against Joshua Kagan under New York DCL § 274?

            \_\_\_\_\_ YES     \_\_\_\_\_ NO

*If you answered "Yes" to either of Questions 1 or 2, proceed to the next section.  If you answered "No" to Questions 1 and 2, stop—you have reached your verdict.  Please proceed to the "Verdict Certification" page and follow the directions there.*

1

**Damages**

1.  What is the total amount of the funds that you find Joshua Kagan received from Irving Kagan that represented proceeds of the July 6, 2017 loan that Rafic Saadeh made to Irving Kagan?

$_____

2.  What is the net amount of the payments that you find that Joshua Kagan made to Irving Kagan after the final transfer to Joshua Kagan of proceeds from the loan Rafic Saadeh made to Irving Kagan?  If you find that Joshua Kagan's payments to Irving Kagan exceeded Irving Kagan's payments to Joshua Kagan, please write the net amount below.  If you find that Irving Kagan's payments to Joshua Kagan exceeded or equaled Joshua Kagan's payments to Irving Kagan, please write "0" below.

$_____

*Please go to the last page, "Verdict Certification," and follow the instructions there.*

2

## VERDICT CERTIFICATION

**PRINTED NAME**                          **SIGNATURE**

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

BY PRINTING AND SIGNING YOUR NAME ABOVE, EACH JUROR IS INDICATING THAT HE OR SHE AGREES WITH EACH AND EVERY ANSWER REPORTED ON THIS VERDICT FORM.  AFTER EACH MEMBER OF THE JURY HAS PRINTED AND SIGNED THE VERIFICATION, THE FOREPERSON SHOULD SUMMON THE MARSHAL AND ADVISE HIM OR HER THAT YOU ARE READY TO REPORT YOUR ANSWERS TO THE COURT.

**COURT EXHIBIT C**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
----------------------------------------------------------------------X
                                                    :
RAFIC SAADEH,                                       :
                                                    :
                              Plaintiff,            :         20  Civ. 1945 (PAE)
                    -v-                              :
                                                    :
JOSHUA KAGAN,                                       :
                                                    :
                              Defendant.            :
                                                    :
----------------------------------------------------------------------X
```

**VERDICT FORM**

Instructions:  When answering the following questions and filling out this Verdict Form, please answer the questions in the sequence in which they appear, and follow the directions provided in this form.  Your answer to each question must be unanimous.  Please refer to the Jury Charge for guidance on the law applicable to the subject matter covered by each question.

**Liability**

1.  Do you find in favor of Mr. Saadeh on his constructive fraudulent conveyance claim brought against Joshua Kagan under New York DCL § 273?

_____ YES      _____ NO

2.  Do you find in favor of Mr. Saadeh on his constructive fraudulent conveyance claim brought against Joshua Kagan under New York DCL § 274?

_____ YES      _____ NO

*If you answered "Yes" to either of Questions 1 or 2, proceed to the next section.  If you answered "No" to Questions 1 and 2, stop—you have reached your verdict.  Please proceed to the "Verdict Certification" page and follow the directions there.*

1

**Damages**

1.  What is the total amount of the funds that you find were constructively fraudulently transferred by Irving Kagan to Joshua Kagan?

      $_____

2.  What is the net amount of the payments that you find that Joshua Kagan made to Irving Kagan after August 2017?  If you find that Joshua Kagan's payments to Irving Kagan exceeded Irving Kagan's payments to Joshua Kagan, please write the net amount below.  If you find that Irving Kagan's payments to Joshua Kagan exceeded or equaled Joshua Kagan's payments to Irving Kagan, please write "0" below.

      $_____

*Please go to the last page, "Verdict Certification," and follow the instructions there.*

## **VERDICT CERTIFICATION**

**PRINTED NAME**                              **SIGNATURE**

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

BY PRINTING AND SIGNING YOUR NAME ABOVE, EACH JUROR IS INDICATING THAT HE OR SHE AGREES WITH EACH AND EVERY ANSWER REPORTED ON THIS VERDICT FORM.  AFTER EACH MEMBER OF THE JURY HAS PRINTED AND SIGNED THE VERIFICATION, THE FOREPERSON SHOULD SUMMON THE MARSHAL AND ADVISE HIM OR HER THAT YOU ARE READY TO REPORT YOUR ANSWERS TO THE COURT.

3

**COURT EXHIBIT D**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAFIC SAADEH,

                    Plaintiff,

          -v-                                             20 Civ. 1945 (PAE)

JOSHUA KAGAN,

                    Defendant.

PAUL A. ENGELMAYER, District Judge:

**Jury Charge**
**November 15, 2023**

s

# TABLE OF CONTENTS

I.   GENERAL INSTRUCTIONS ....................................................................................... 1

   A.   Introductory Remarks ............................................................................... 1

   B.   Role of the Court ........................................................................................ 2

   C.   Role of the Jury .......................................................................................... 2

   D.   Role of Counsel / Objections and Sidebars ............................................. 2

   E.   Sympathy or Bias ....................................................................................... 3

   F.   What Is and Is Not Evidence ..................................................................... 4

   G.   Direct and Circumstantial Evidence ....................................................... 5

   H.   Witness Credibility .................................................................................... 6

   I.   Interested Witnesses .................................................................................. 8

   J.   All Available Evidence Need Not Be Produced ....................................... 8

   K.   Burden of Proof ......................................................................................... 9

II.  SUBSTANTIVE CHARGES ...................................................................................... 10

   A.   Overview of Claims .................................................................................. 10

   B.   Fraudulent Conveyance Generally ........................................................ 10

   C.   Constructive Fraudulent Conveyance Under DCL § 273 ..................... 10

   D.   Constructive Fraudulent Conveyance Under DCL § 274 ..................... 14

   E.   Damages ................................................................................................... 15

III. DELIBERATIONS OF THE JURY ............................................................................. 16

   A.   Right to See Exhibits and Hear Testimony ........................................... 16

   B.   Communication with the Court ............................................................. 17

   C.   Notes ......................................................................................................... 17

   D.   Duty to Deliberate; Unanimous Verdict ............................................... 17

   E.   Verdict Form ............................................................................................ 18

   F.   Duties of Foreperson ............................................................................... 18

   G.   Return of Verdict ..................................................................................... 19

IV.  CONCLUSION ...................................................................................................... 19

## I.   GENERAL INSTRUCTIONS

### A.   Introductory Remarks

Members of the jury, you have now heard all of the evidence in the case, and you will soon hear the final arguments of the parties.  You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict in the case.

Now it is time for me to instruct you as to the law that governs the case.  There are three parts to these instructions.  First, I'm going to give you some general instructions about your role, and about how you are to decide the facts of the case.  These instructions really would apply to just about any trial.  Second, I'll give you some specific instructions about the legal rules applicable to this particular case.  Third, after counsel's closing arguments, I'll give you some final instructions about procedure.

Listening to these instructions may not be easy.  It is important, however, that you listen carefully and concentrate.  I ask you for patient cooperation and attention.  You'll notice that I'm reading these instructions from a prepared text.  It would be more lively, no doubt, if I just improvised.  But it's important that I not do that.  The law is made up of words, and those words are very carefully chosen.  So when I tell you the law, it's critical that I use exactly the right words.

You'll have copies of what I'm reading in the jury room to consult, so don't worry if you miss a word or two.  But for now, listen carefully and try to concentrate on what I'm saying.  I will be distributing to you a verdict form, in which to record your verdict.  It will list the questions that you must consider, in the order that you should consider them.

### B.    Role of the Court

My duty at this point is to instruct you as to the law.  It is your duty to accept these instructions of law and to apply them to the facts as you determine them.  With respect to legal matters, you must take the law as I give it to you.  If any attorney has stated, or states, a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.  You must not substitute your own notions or opinions of what the law is or ought to be.

### C.    Role of the Jury

As members of the jury, you are the sole and exclusive judges of the facts.  You pass upon the evidence.  You determine the credibility of the witnesses.  You resolve such conflicts as there may be in the testimony.  You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

Although you are encouraged to use all of your life experiences in analyzing testimony and reaching a fair verdict, you may not communicate any personal or professional expertise you might have or other facts not in evidence to the other jurors during deliberations.  You must base your discussions and decisions solely on the evidence presented to you during the trial and that evidence alone.  You may not consider or speculate on matters not in evidence or matters outside the case.

### D.    Role of Counsel / Objections and Sidebars

It is the duty of the attorneys to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible.  It is my job to rule on those objections.  Therefore, why an objection was made or why I ruled on it the way I did is not your concern.  You should draw no inference from the fact that an attorney objected to any evidence.

Nor should you draw any inference from the fact that I might have sustained or overruled an objection.  Simply because I have permitted certain evidence to be introduced does not mean that I have decided on its significance.  That is for you to decide.

From time to time, the lawyers and I had conferences out of your hearing.  These conferences involved procedural and other matters, and none of the events relating to these conferences should enter into your deliberations at all.

Similarly, the personalities and the conduct of counsel in the courtroom are not in any way at issue.  If you formed reactions of any kind to any of the lawyers in the case, favorable or unfavorable, whether you approved or disapproved of their behavior as advocates, those reactions should not enter into your deliberations.

### E.    Sympathy or Bias

You are to evaluate the evidence calmly and objectively, without prejudice or sympathy. You are to be completely fair and impartial.  Your verdict must be based solely on the evidence developed at this trial, or the lack of evidence.  The parties in this case are entitled to a trial free from prejudice and bias.  Our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

It would be improper for you to consider, in deciding the facts of the case, any personal feelings you may have about the race, national origin, sex or age of any witness, or any other such irrelevant factor.  This case should be decided by you as an action between parties of equal standing in the community, and of equal worth.  All parties are entitled to the same fair trial at your hands.  All parties stand equal before the law, and are to be dealt with as equals in this Court.

### F.      What Is and Is Not Evidence

I want to take a moment to describe to you what is and is not evidence in this case.  As I have said, you may rely only on the evidence in your deliberations.  The evidence in this case is the sworn testimony of the witnesses, and the exhibits received in evidence.  On the other hand, certain things are not evidence.

First, I will describe a list of examples of things that are not evidence:

1.      A question by a lawyer is not to be considered by you as evidence.  It is the witnesses' answers that are evidence, not the questions.  At times, a lawyer may have incorporated into a question a statement which assumed certain facts to be true, and asked the witness if the statement was true.  If the witness denied the truth of a statement, and if there is no direct evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the lawyer's question.

2.      Similarly, arguments by lawyers are not evidence, because the lawyers are not witnesses.  What they have said in their opening statements was intended, and what they will say to you in their closing statements will be intended, to help you understand the evidence and to reach your verdict.  However, if your recollection of the facts differs from the lawyers' statements, it is your recollection which controls.

3.      Statements that I may have made concerning the evidence do not constitute evidence.  Similarly, at times, I may have admonished a witness or directed a witness to be responsive to questions or to keep his or her voice up.  At times, I may have asked a question myself.  Any questions that I asked, or instructions that I gave, were intended only to clarify the presentation of evidence and to bring out something that I thought might be unclear.  You should draw no inference or conclusion of any kind, favorable or unfavorable, with respect to any witness or any party in the case, by reason of any comment, question, or instruction of mine.  Nor should you infer that I have any views as to the credibility of any witness, as to the weight of the evidence, or as to how you should decide any issue that is before you.  That is entirely your role.

4.      Testimony that has been stricken or excluded is not evidence, and it may not be considered by you in rendering your verdict.

5.      Anything you may have seen or heard outside the courtroom is not evidence.

Now, I will provide you with some things that you may consider as evidence.  As I have

said, evidence may come in several forms:

1.    The sworn testimony of witnesses, regardless of who called them, is evidence.  This is true of the witnesses' answers on both direct and cross examination.  However, if certain testimony was received for a limited purpose, you must follow the limiting instructions I have given.

2.    The exhibits that were admitted during the trial are evidence.  Exhibits marked for identification but not admitted are not evidence, nor are materials brought forth only to refresh a witness's recollection.

3.    Prior testimony is evidence.  Such testimony, known as depositions, is produced through a procedure where, prior to trial, the attorneys for one side may question a witness or an adversary under oath.  This is part of what is called pretrial discovery, and each side is entitled to take depositions.  To the extent I admitted excerpts of prior testimony at trial, you may consider the prior testimony of a witness according to the same standards you would use to evaluate the testimony of a witness given at trial.

### G.    Direct and Circumstantial Evidence

Generally, as I told you in my initial instructions, there are two types of evidence that you

may consider in reaching your verdict.  One type of evidence is direct evidence.  Direct evidence

is testimony by a witness about something he or she knows by virtue of his or her own senses—

something he or she has seen, felt, touched, or heard.  For example, if a witness testified that

when she left her house this morning, it was raining, that would be direct evidence about the

weather.

Circumstantial evidence is evidence from which you may infer the existence of certain

facts.  To use the same example I gave you at the start of trial:  Assume that when you came into

the courthouse this morning, the sun was shining and it was a nice day.  Assume that the

courtroom blinds were drawn and you could not look outside.  As you were sitting here, someone

walked in with an umbrella, which was dripping wet.  Then a few minutes later another person

entered with a wet raincoat.  Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining, and no one has testified that it is raining.  So you have no direct evidence of that fact.  But on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence.  You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact.  Many facts, such as a person's state of mind or intentions, are rarely susceptible of proof by direct evidence.  Usually, such facts are established by circumstantial evidence.  Where circumstantial evidence is presented, it is of no less value than direct evidence, for it is a general rule that the law makes no distinction between direct evidence and circumstantial evidence.

### H.     Witness Credibility

You have had the opportunity to observe the witnesses.  It is now your job to decide how believable each witness was in his or her testimony.  You are the sole judge of the credibility of each witness and of the importance of his or her testimony.

In making these judgments, you should carefully scrutinize the testimony of each witness, the circumstances under which each witness testified, the impression the witness made when testifying, and any other matter in evidence which may help you decide the truth and the importance of each witness's testimony.

How do you determine where the truth lies?  You watched each witness testify. Everything a witness said or did on the witness stand counts in your determination.  How did the witness impress you?  Did he or she appear to be frank, forthright, and candid?  Or was the witness evasive and edgy, as if hiding something?  How did the witness appear?  What was his

or her demeanor—that is, his or her carriage, behavior, bearing, manner, and appearance while testifying?  Often it is not what a person says but how he or she says it that moves us.

You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life.  You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case.  You should consider the opportunity the witness had to see, hear, and know the things about which he or she testified, the accuracy of his or her memory, his or her candor or lack of candor, his or her intelligence, the reasonableness and probability of his or her testimony and its consistency or lack of consistency and its corroboration or lack of corroboration with other credible testimony.

In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given, and all of the other evidence in the case.  Always remember that you should use your common sense, your good judgment, and your everyday experiences in life to make your credibility determinations.

If you find that any witness has willfully testified falsely as to any material fact—that is, as to an important matter—the law permits you to disregard the entire testimony of that witness upon the principle that one who testifies falsely about one material fact is likely to testify falsely about everything.  However, you are not required to consider such a witness as totally "unbelievable."  You may accept so much of the witness's testimony as you deem true and disregard what you feel is false.  By the processes which I have just described, you, as the sole judges of the facts, decide which of the witnesses you will believe, what portion of each witness's testimony you accept, and what weight you will give to it.

## I.      Interested Witnesses

In deciding whether to believe a witness, you should take into account any evidence that shows that a witness may benefit in some way from the outcome of the case, such as a financial interest.  Likewise, you should specifically note any evidence of hostility or affection that the witness may have towards one of the parties.  You should also consider any other interest or motive that the witness may have in cooperating with a particular party.

It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony.  In short, if you find that a witness is biased, you should view his or her testimony with caution, weigh it with care, and subject it to close and searching scrutiny.

An interested witness is not necessarily less believable than a disinterested witness.  The mere fact that a witness is interested in the outcome of the case does not mean he or she has not told the truth.  It is for you to decide from your observations and applying your common sense and experience and all the other considerations mentioned, whether the possible interest of any witness, or of any party, has intentionally or otherwise colored or distorted his or her testimony. You are not required to believe an interested witness; you may accept as much of his or her testimony as you deem reliable and reject as much as you deem unworthy of acceptance.

## J.      All Available Evidence Need Not Be Produced

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters in issue at this trial.  Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence in this case.

Each party has had an equal opportunity or lack of opportunity to call any witnesses. Therefore, you should not draw any inferences or reach any conclusions as to what any uncalled

witnesses would have testified to had they been called.  The absence of any witnesses should not affect your judgment in any way.

### K.      Burden of Proof

In general, the plaintiff, Rafic Saadeh, has the burden of proving all the elements of his claims by a preponderance of the evidence.  There are exceptions to this which I will cover later when I discuss the particular claims, but in general Mr. Saadeh has the burden to prove his claims by a preponderance of the evidence.

What does a "preponderance of the evidence" mean?  To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not.  A preponderance of the evidence means the greater weight of the evidence.  It refers to the quality and persuasiveness of the evidence, not the number of witnesses or documents.  In determining whether a claim has been proven by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.

If, after considering all of the testimony, you are satisfied that the party with the burden of proof has carried his burden on each essential point of his claim, then you must find in that party's favor.  If, after such consideration, you find that the evidence produced by a party is outweighed by the evidence against that party's position, or that the credible evidence on a given issue is evenly divided between the parties—that it is as equally probable that one side is right as it is that the other side is right—then you must decide that issue against the party bearing the burden of proof on that issue.  That is because when a party bears the burden of proof he must therefore prove more than simple equality of evidence—he must prove the element by a preponderance of the evidence.  On the other hand, a party bearing the burden of proof by a

preponderance of the evidence need prove no more than a preponderance.  So long as you find

that the scales tip, however slightly, in favor of that party—that what he claims is more likely

true than not—then that element will have been proven by a preponderance of the evidence.

Some of you may have heard of proof beyond a reasonable doubt, which is the proper

standard of proof only in a *criminal* trial.  That requirement does not apply to a civil case such as

this, and you should put it out of your mind.

## II.    SUBSTANTIVE CHARGES

I am now going to instruct you on the substantive law to be applied to the plaintiff's

claims in this lawsuit.

### A.    Overview of Claims

The plaintiff, Rafic Saadeh, brings two claims against Joshua Kagan.

The plaintiff's claims are both for what is called constructive fraudulent conveyance

under New York state law.  I am first going to describe the concept of fraudulent conveyance.

Then I will set out the elements of the two claims.

### B.    Fraudulent Conveyance Generally

What is a fraudulent conveyance?  Broadly speaking, a fraudulent conveyance is a

transfer of money made by a person to place that money out of the reach of creditors.  A

constructive fraudulent conveyance involves a transfer made under certain objective

circumstances that the law has deemed indicative of fraud.

### C.    Constructive Fraudulent Conveyance Under DCL § 273

The plaintiff Mr. Saadeh's first claim of constructive fraudulent conveyance is under

New York Debtor-Creditor Law, or DCL, § 273.

To find for the plaintiff on this claim, you must find that he has established each the following four elements: first, that the plaintiff Mr. Saadeh made a loan to Irving Kagan, making the plaintiff a creditor of Irving Kagan; second, that, after receiving a loan from the plaintiff, Irving Kagan transferred funds to the defendant Joshua Kagan that were proceeds of Mr. Saadeh's loan; third, that Irving Kagan did not receive fair consideration in exchange for the funds transferred to Joshua Kagan; and fourth, that Irving Kagan was insolvent at the time of the transfer or transfers to Joshua Kagan, or that the transfer or transfers to Joshua Kagan rendered Irving Kagan insolvent.

Each of these elements must be established for the plaintiff to prevail on this claim. If any one element is lacking, the plaintiff's claim fails and you must find for the defendant.

### 1. First Element: Loan from Mr. Saadeh to Irving Kagan

To find for the plaintiff on this element, he must prove by a preponderance of the evidence that he loaned money to Irving Kagan.

This point is undisputed: the parties agree that on or about July 6, 2017, Rafic Saadeh lent $130,000 to Irving Kagan. I instruct you that you must find this element established.

### 2. Second Element: Transfers from Irving Kagan to Joshua Kagan

To find for the plaintiff on this element, he must prove by a preponderance of the evidence that Irving Kagan transferred funds to Joshua Kagan which were proceeds of the loan Irving Kagan had received from Mr. Saadeh.

As to this element, the plaintiff alleges that, during the period between July 6, 2017 and the end of August 2017, Irving Kagan transferred funds to Joshua Kagan which were proceeds of the loan from Mr. Saadeh and which totalled $57,929. The defendant disputes this.

### 3. Third Element: Lack of Fair Consideration

A constructive fraudulent conveyance is a transfer made without receiving fair consideration in return.  For there to be fair consideration, in the context of this case, you must find three things: (1) first, that the funds that Joshua Kagan received from Irving Kagan were to discharge a past debt (known as an "antecedent debt") that Irving Kagan owed Joshua Kagan; (2) second, that the sum that Joshua Kagan received from Irving Kagan was the "fair equivalent" of what had been owed by Irving Kagan to Joshua Kagan based on an antecedent debt; and (3) third, that Irving Kagan's transfer to Joshua Kagan was made in good faith.

In general, as I said earlier, it is Mr. Saadeh's burden to prove the elements of his case by a preponderance of the evidence.  But, as I also said earlier, there are exceptions.  One of them applies to the element of the lack of fair consideration.  Under the law, in the case of intra-family transfers, meaning a transfer from one family member to another, the burden of proof shifts to the defendant to show that there was fair consideration.  It is undisputed in this case that Irving Kagan and Joshua Kagan were members of the same family.  And so, the burden is on Joshua Kagan to establish by a preponderance of the evidence that there was fair consideration for any money transferred from Irving Kagan to him.  If Joshua Kagan fails to establish that, you must find this element in favor of the plaintiff, Rafic Saadeh.

As to this element, Joshua Kagan argues that the funds that Irving Kagan transferred to him in the two months after Irving Kagan had received the loan from Mr. Saadeh were paid to him to discharge part of an earlier, or antecedent, debt that Irving Kagan owed to him.  That debt, he states, arose when Joshua Kagan loaned Irvin Kagan money to settle a lawsuit in which Irving Kagan was sued as a guarantor on Michael Kagan's apartment lease.  The plaintiff disputes this.

Insofar as Joshua Kagan argues that fair consideration exists because the transfer or transfers to him discharged an antecedent debt, he must show that that there was a debt, that that

12

debt was incurred before the transfer at issue, and that the transfer paid down the antecedent debt either partially or in full.

Finally, to constitute fair consideration a payment must have been made in good faith. Good faith refers to honest, fair, and open dealings. Good faith can be established by showing that the transferee, meaning Joshua Kagan, possessed an honest belief in the propriety of the transfer in question, that the transferee had no intention to take unconscionable advantage of others, and that the transferee had no intent to hinder, delay, or defraud others, and had no knowledge of the possibility that the transfer in question would hinder, delay, or defraud others. The defendant Joshua Kagan argues that he acted in good faith in receiving the funds in question from his father, including because, he asserts, Joshua Kagan was aware of Irving Kagan's assets and current and future earnings and income. The plaintiff Mr. Saadeh argues that he did not, including because, he asserts, Joshua Kagan knew of his father's allegedly unfavorable financial condition.

### 4. Insolvency

Finally, for there to be a constructive fraudulent conveyance under DCL § 273, you must find that Irving Kagan was insolvent at the time the transfer to Joshua Kagan was made, or that the transfer rendered Irving Kagan insolvent. If you find that there was not fair consideration for the transfer, there is a presumption that Irving Kagan was insolvent at the time of the transfer. And so, if you find a lack of consideration, Joshua Kagan bears the burden of showing, by a preponderance of the evidence, that Irving Kagan was solvent.

A person is insolvent when the fair salable value of his assets at the time of the allegedly fraudulent transfer was less (or was rendered less by the transfer) than the amount required to

pay his outstanding debts.  Inversely, a person is solvent if he has enough assets to pay all outstanding liabilities he owes even after the transfer at issue.

### D.     Constructive Fraudulent Conveyance Under DCL § 274

The plaintiff Mr. Saadeh's second claim of constructive fraudulent conveyance is under New York Debtor-Creditor Law, or DCL, § 274.

There are four elements to this claim.  For the plaintiff to prevail on this claim, you must find all four elements in his favor.

The first three elements are identical in every respect to the first three elements under the plaintiff's first claim, under DCL § 273.  And so, your earlier findings as to the first three elements equally apply to this claim.  Again, the first three elements are, first, that there was a loan from Mr. Saadeh to Irving Kagan; second, that Irving Kagan transferred proceeds of that loan to Joshua Kagan; and third, that there was not fair consideration for that transfer or transfers.  And so, if you have found each of these elements in the plaintiff's favor on the first claim, under DCL § 273, you should find them here too, and proceed to the fourth element of DCF § 274.  If, however, on the first claim, you have found any of these elements not to be in plaintiff's favor, those findings equally apply to the second claim, under DCL § 274, and you must return a verdict to the defendant on the second claim, under DCL § 274.

The only different element between plaintiff's two claims is the fourth element.  To establish the fourth element under DCL § 274, the plaintiff must show by a preponderance of the evidence that at the time of Irving Kagan's alleged fraudulent transfers to Joshua Kagan, Irving Kagan had unreasonably small capital to engage in business or a transaction in which he was then engaged, or that he was imminently to become engaged.  The business or transaction at issue here is the repayment to Mr. Saadeh of the $130,000 he lent to Irving Kagan.  And so, to

establish this element, the plaintiff must establish by a preponderance of the evidence that, at the time of the transfer or transfers to Joshua Kagan, Irving Kagan was engaged or was about to engage in business dealings or a transaction with Mr. Saadeh, meaning the repayment of the loan, and that Irving Kagan's transfer or transfers to Joshua Kagan left him with unreasonably small capital to engage in those dealings or that transaction.

Again, as with the first claim, all four elements must be established for the plaintiff to prevail on the § 274 constructive fraudulent conveyance claim.  If any one element is lacking, the plaintiff's claim fails and you must find for the defendant.

### E.    Damages

If, but only if, you conclude that the plaintiff Mr. Saadeh has met his burden of proving liability, that is, you have found each of the elements of either or both of his claims according to the instructions I have given you, then you must determine the damages, if any, to which the plaintiff is entitled.

You should not infer that the plaintiff is entitled to recover damages merely because I am instructing you on how to calculate damages.  It is exclusively your function to decide upon liability.  I am instructing you on damages only so that you will have guidance should you decide that they are warranted.

If you find that the plaintiff has established either of his constructive fraudulent conveyance claims, there are two separate calculations I will ask you to make, which will assist the Court in determining the amount of damages, if any, the plaintiff is due.  There is a separate line on the verdict form for each of these.

First, you are to calculate the sum total of the transfer or transfers of funds that you find that Irving Kagan transferred to Joshua Kagan that were proceeds of Mr. Saadeh's loan.  Again,

15

the plaintiff alleges that $57,929 of proceeds of the loan were transferred by Irving Kagan to Joshua Kagan between July 6, 2017 and the end of August 2017.

Second, you are to calculate the net amount of money that Joshua Kagan paid to Irving Kagan after the transfers to him of proceeds of the loan from Mr. Saadeh. In calculating this figure, you are to add up the payments that Joshua Kagan paid to Irving Kagan after August 2017, that is, after receiving the proceeds of the loan from Mr. Saadeh. You are separately to add up the payments, if any, that Irving Kagan made to Joshua Kagan after August 2017. You are then to subtract the latter from the former. If you find that Joshua Kagan made a net repayment to his father after receiving proceeds of the loan Irving Kagan had recovered from Mr. Saadeh, you are to write that figure in the second line under damages in the verdict form. It is Joshua Kagan's burden, by a preponderance of the evidence, to establish any such net repayment by him to Irving Kagan.

## III.   DELIBERATIONS OF THE JURY

### A.   Right to See Exhibits and Hear Testimony

Members of the jury, now that you have heard the closing arguments of the parties, you are about to go into the jury room to begin your deliberations. Before you do that, I will give you a few final instructions.

The exhibits received in evidence will be accessible to you upon request. If during those deliberations you want to see a hard copy of any of the exhibits, you may request that they be brought into the jury room. If you want any of the testimony read, you may also request that. Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting exhibits or portions of the testimony. And please be patient—with respect to requests for testimony, it can sometimes take counsel and the Court some time to

identify the portions that are responsive to your request.  If you want any further explanation of the law as I have explained it to you, you may also request that.

To assist you in your deliberations, I will be providing you a list of the exhibits; a list of the witnesses who testified, in the order in which they testified; a verdict form, which I have referred to and which I will discuss in a moment; and a copy of these instructions.  There is one of each of these for each juror.

### B.       Communication with the Court

Your requests for exhibits or testimony—in fact any communications with the Court—should be made to me in writing, signed by your foreperson, and given to one of the marshals.  In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

### C.       Notes

Some of you have taken notes periodically throughout this trial.  I want to emphasize to you, as you are about to begin your deliberations, that notes are simply an aid to memory.  Notes that any of you may have made may not be given any greater weight or influence than the recollections or impressions of other jurors, whether from notes or memory, with respect to the evidence presented or what conclusions, if any, should be drawn from such evidence.  All jurors' recollections are equal.  If you can't agree on what you remember the testimony was, you can ask to have the transcript read back.

### D.       Duty to Deliberate; Unanimous Verdict

You will shortly retire to decide the questions I have described to you.  For the plaintiffs to prevail on the questions that you must answer, they must sustain their burden of proof as I

have explained to you with respect to the questions you are considering.  Your verdict on each question must be unanimous.

Each juror is entitled to his or her opinion, but you are required to exchange views with your fellow jurors.  This is the very essence of jury deliberation.  It is your duty to discuss the evidence.  If you have a point of view and after reasoning with other jurors it appears that your own judgment is open to question, then of course you should not hesitate in yielding your original point of view if you are convinced that the opposite point of view is really one that satisfies your judgment and conscience.  You are not to give up a point of view, however, that you conscientiously believe in simply because you are outnumbered or outweighed.  You should vote with the others only if you are convinced on the evidence, the facts, and the law that it is the correct way to decide the case.  You are not to discuss the case until all jurors are present.  Five or six jurors together is only a gathering of individuals.  Only when all eight jurors are present do you constitute a jury, and only then may you deliberate.

### E.    Verdict Form

I have prepared a verdict form for you to use in recording your decision as to the plaintiff's claims.  Please use those forms to report your verdict.

### F.    Duties of Foreperson

Finally, I referred a moment ago to a foreperson.  The first thing you should do when you retire to deliberate is take a vote to select one of you to sit as your foreperson, and then send out a note indicating whom you have chosen.

The foreperson doesn't have any more power or authority than any other juror, and his or her vote or opinion doesn't count for any more than any other juror's vote or opinion.  The foreperson is merely your spokesperson to the court. He or she will send out any notes, and

when the jury has reached a verdict, he or she will notify the marshal that the jury has reached a verdict, and you will come into open court and give the verdict.

### G.   Return of Verdict

After you have reached a verdict, your foreperson will fill in and date the form that has been given to you.  All jurors must sign the form reflecting each juror's agreement with the verdict.  The foreperson should then advise the marshal outside your door that you are ready to return to the courtroom.

I will stress that each of you must be in agreement with the verdict which is announced in court.  Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

In conclusion, members of the jury, I am sure that if you listen to the views of your fellow jurors and if you apply your own common sense, you will reach a fair verdict here.

## IV.   CONCLUSION

Members of the jury, that concludes my instructions to you.  I will ask you to remain seated while I confer with the attorneys to see if there are any additional instructions that they would like me to give to you or anything I may not have covered in my previous statement.

* * * * *

Members of the jury, you may now retire.  The marshal will be sworn before we retire.

(Marshal sworn)

**COURT EXHIBIT E**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
--------------------------------------------------------------------X
                                            :
RAFIC SAADEH,                               :
                                            :
                          Plaintiff,        :              20  Civ. 1945 (PAE)
              -v-                           :
                                            :
JOSHUA KAGAN,                               :
                                            :
                          Defendant.        :
                                            :
--------------------------------------------------------------------X
```

WITNESS LIST:

1. Michael Kagan

2. Joshua Kagan

3. Marni Kagan

4. Robert Cohen

**COURT EXHIBIT F**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------------X
                                                  :
RAFIC SAADEH,                                     :
                                                  :
                          Plaintiff,              :          20  Civ. 1945 (PAE)
            -v-                                   :
                                                  :
JOSHUA KAGAN,                                     :
                                                  :
                          Defendant.              :
                                                  :
------------------------------------------------------------------X
```

LIST OF ADMITTED TRIAL EXHIBITS:

*PLAINTIFF'S EXHIBITS*

**PX-3**: Email from Michael Kagan to Rafic Saadeh of December 20, 2017 at 5:15 p.m.

**PX-24**: Irving Kagan Chase Bank account statement for June 2017 through October 2017 (MK341-72)

**PX-25**: Kagan Consultants Chase Bank account statements for June 2017 through December 2017 (MK2232-59)

**PX-26**: Irving Kagan AMEX bill (account ending in 9-13007) for July 2017 (MK2969-77)

**PX-27**: Irving Kagan AMEX bill (account ending in 9-13007) for August 2017 (MK2978-86)

**PX-28**: Irving Kagan AMEX bill (account ending in 9-13007) for September 2017 (MK2987-3000)

**PX-29**: Irving Kagan AMEX bill (account ending in 9-13007) for October 2017 (MK3001-12)

**PX-31**: Email exchange between Michael Kagan and Irving Kagan of December 20, 2017 (MK4786-87)

**PX-36**: Text messages between Irving Kagan and Joshua Kagan from July-August 2017 (JK2-5)

**PX-37**: Text messages between Irving Kagan and Joshua Kagan from October 2017-December 2019 (JK6-51)


*DEFENDANT'S EXHIBITS*

**DX 1**:  Irving Kagan Chase Bank account statement for June 2017 through December 2017 (MK341-384)

**DX 2**:  Irving Kagan Chase Bank account statement for January 2018 through December 2018 (MK385-462)

**DX 3**:  Irving Kagan Chase Bank account statement for January 2019 through December 2019 (MK463-528)

**DX 6**:  Email exchanges between Joshua Kagan and Harold Bollaci, Esq. (JK 79-85)

**DX 8**:  Summons and Complaint, *MH770-54th Street LLC v. Irving Kagan and Robert A. Cohen*, Index No. 162294/2015.

**COURT EXHIBIT G**

## Engelmayer NYSD Chambers

| | |
|---|---|
| **From:** | Rick Scarola ████████████ |
| **Sent:** | Thursday, November 16, 2023 8:17 AM |
| **To:** | Engelmayer NYSD Chambers; Alex Zubatov; John Maggio; Zachary Groendyk |
| **Subject:** | RE: 20cv1945 Saadeh v. Kagan -- Jury Note 3 |

**CAUTION - EXTERNAL:**

Dear Judge Engelmayer -- In the interest expediting discussion when you convene at 8:45 a.m., I am setting out below what I will say on the record as to Jury Note 3 so that the Court can consider it in advance and Mr. Maggio can have the benefit of reviewing it before addressing the point.
Respectfully submitted,
Rick Scarola

****************************************
We are concerned that the question as transmitted is unclear and requires clarification, in particular insofar as phrasing one of two possible responses as "referring to the terms of the loan (July 2017-Jan 2018)."
That phrase is unclear and also may suggest more confusion than can be resolved with a simple reference to the relevant point in time being "the time of the transfer or transfers to Joshua Kagan … ."  In that regard, we note that the latter part of the long charge sentence in question refers to Irving Kagan's "business dealings or a transaction with Mr. Saadeh, meaning the repayment of the loan."  While we believe the charge is correct on the law, this phrasing in particular may have confused some member(s) of the jury -- specifically, to conclude that the time when repayment is owed, or even the time that is the entire duration of the loan term, is relevant. Additionally, there is further confusion in the reference to the loan term as having been through July 2018. The term may not even be in evidence, but in all events, the full term was extended to a later date at Michael Kagan's request. The jury may have identified the term it references from P.'s Exs. 3 and 31 (emails authored my Michael Kagan requesting extension).
At bottom, plaintiff submits all of this indicates that there is more to the question — or confusion — than the brief and difficult to comprehend Jury Note 3 reveals.
For avoiding doubt, we of course agree that the correct time at which the jury should be determining inadequate capital is the time of the transfers to Joshua. Our concern is that the jury's question is stated sufficiently clearly so as to be answered meaningfully.
As a next step --
The Court could address this by asking for elaboration on the question. That could cure confusion not stated sufficiently clearly in Jury Note 3, so that the answer meets the actual question and need.
At a minimum, we believe that the Court could enhance the answer with a more complete statement of the law, tracking the paragraph in the charge, but elaborating that the charge requires that "each alleged transfer be evaluated as of the time of such transfer, and hence, more precisely, the correct inquiry is whether Irving Kagan had sufficient capital, as defined, at the time of each individual transfer, considering each individual transfer as an independent transaction, in evaluating [remainder of charge language on the Sec. 274 standard]."

_____

Rick Scarola
Office #:  212-937-0008

-------- Original message --------

From: Engelmayer NYSD Chambers ██████████████████
Date: 11/15/23 5:31 PM (GMT-05:00)
To: Rick Scarola ████████████████, Alex Zubatov ████████████, John Maggio ██████████████████, Zachary Groendyk ████████████
Subject: 20cv1945 Saadeh v. Kagan -- Jury Note 3

Good evening,

What follows is a transcription of Jury Note 3:

<Can you define "at the time of the transfer or transfers" p 15 part D?  Specifically, are you referring to the terms of the loan (July 2017-Jan 2018) or the $ transferred?  Clarification of this point will lead us to a verdict.>

Regards,
Chambers of Judge Paul A. Engelmayer

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

Ladies and gentlemen of the jury:

I have received your note from late yesterday, which we have marked as Jury Note Number 3.
Jury Note Number 1 identified your foreperson.  Jury Note Number 2 asked for copies of certain
exhibits.

Jury Note Number 3 reads:

*"Can you define "at the time of the transfer or transfers" p 15 part D?  Specifically, are you
referring to the terms of the loan (July 2017-Jan 2018) or the $ transferred?  Clarification of this
point will lead us to a verdict."*

Your question relates to the fourth element of DCL § 274, which is what is being addressed on
the portion of page 15 of the jury instructions to which your note refers.  There are two parts to
this answer.

First, the quoted language you've highlighted in your question, where the instructions say, "at
the time of the transfer or transfers," refers to the transfer or transfers of money to Joshua Kagan
from Irving Kagan, if any, which you have found to have represented proceeds of the loan from
Rafic Saadeh to Irving Kagan.  The plaintiff here claims that the transfers to Joshua Kagan
occurred in July and August 2017.  Therefore, in determining whether Irving Kagan had
"unreasonably small capital to engage in business or a transaction in which he was then engaged
or was imminently to become engaged," your focus must be on the information that was
available about Irving Kagan's finances at the time of those transfers by Irving Kagan to Joshua
Kagan.

Second, the instructions identify the repayment of Rafic Saadeh as the transaction in which
Irving Kagan was to be engaged.  The undisputed evidence in the case is that the loan repayment

was not due immediately.  Instead, the loan repayment was due 6 months after the loan was made, that is, on or around January 6, 2018.  The issue therefore is whether Irving Kagan's transfer or transfers to Joshua Kagan left Irving Kagan with unreasonably small capital to make the repayment on the due date on or around January 6, 2018.

Putting those two concepts together, you should focus on the information available about Irving Kagan's finances as of the transfers to Joshua Kagan.  And the question you should be using that information to answer should be, whether the transfers to Joshua Kagan had left Irving Kagan in a position where he would have unreasonably small capital to repay the loan on the due date six months later.

In making this determination, you may consider additions or subtractions to Irving Kagan's capital that would reasonably have been anticipated as of the date of the transfers to Joshua Kagan.

I remind you that, on this element, the plaintiff Rafic Saadeh bears the burden of proof by a preponderance of the evidence.